Citation Nr: 1104827 
Decision Date: 02/07/11 Archive Date: 02/14/11

DOCKET NO. 09-26 733 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Des Moines, 
Iowa


THE ISSUES

1. Entitlement to service connection for bilateral hearing loss 
disability. 

2. Entitlement to service connection for tinnitus. 

3. Entitlement to service connection for immune system disorder.

4. Entitlement to service connection for Parkinson's disease. 


REPRESENTATION

Appellant represented by: Vietnam Veterans of America


ATTORNEY FOR THE BOARD

C. Lawson, Counsel

INTRODUCTION

The Veteran served on active duty from June 1963 to June 1967.

This matter comes to the Board of Veterans' Appeals (Board) on 
appeal from a February 2007 rating decision by a Regional Office 
(RO) of the Department of Veterans Affairs (VA). 

The issue of service connection for Parkinson's disease is 
addressed in the REMAND portion of the decision below and is 
REMANDED to the RO via the Appeals Management Center (AMC), in 
Washington, DC.


FINDINGS OF FACT

1. Hearing loss was not manifest in service or to a degree of 10 
percent within one year of separation and is unrelated to 
service. 

2. Tinnitus was not manifest in service and is unrelated to 
service. 

3. The evidence does not show that the Veteran has a current 
immune system disorder.


CONCLUSIONS OF LAW

1. The criteria for service connection for bilateral hearing 
loss disability are not met. 38 U.S.C.A. §§ 1110, 1131 (West 
2002); 38 C.F.R. § 3.303 (2010).

2. The criteria for service connection for tinnitus are not met. 
38 U.S.C.A. §§ 1101, 1112, 1113, 1131, 1137 (West 2002); 
38 C.F.R. §§ 3.303, 3.307, 3.309 (2010).

3. An immune disorder was not incurred in or aggravated by active 
service, nor may it be presumed to have been incurred as a result 
of exposure to certain herbicide agents. 38 U.S.C.A. §§ 1110, 
1116, 5103, 5103A, 5107(b); 38 C.F.R. §§ 3.102, 3.159, 3.303, 
3.307, 3.309(e).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Veterans Claims Assistance Act (VCAA) 

Upon receipt of a complete or substantially complete application, 
VA must notify the claimant of the information and evidence not 
of record that is necessary to substantiate a claim, which 
information and evidence VA will obtain, and which information 
and evidence the claimant is expected to provide. 38 U.S.C.A. § 
5103(a).

The notice requirements apply to all five elements of a service 
connection claim: 1) Veteran status; 2) existence of a 
disability; (3) a connection between the Veteran's service and 
the disability; 4) degree of disability; and 5) effective date of 
the disability. Dingess v. Nicholson, 19 Vet. App. 473 (2006).

The notice must be provided to a claimant before the initial 
unfavorable adjudication by the RO. Pelegrini v. Principi, 18 
Vet. App. 112 (2004).

The notice requirements may be satisfied if any errors in the 
timing or content of such notice are not prejudicial to the 
claimant. Mayfield v. Nicholson, 19 Vet. App. 103 (2005), rev'd 
on other grounds, 444 F.3d 1328 (Fed. Cir. 2006).

The RO provided the Veteran pre-adjudication notice by letters 
dated in December 2005 and October 2006.

The notification substantially complied with the requirements of 
Quartuccio v. Principi, 16 Vet. App. 183 (2002), identifying the 
evidence necessary to substantiate a claim and the relative 
duties of VA and the claimant to obtain evidence; and Pelegrini 
v. Principi, 18 Vet. App. 112 (2004). The October 2006 notice 
letter advised the Veteran of the laws regarding degrees of 
disability and effective dates for any grant of service 
connection, as is required by Dingess.

VA also has a duty to assist a claimant under the VCAA. VA has 
obtained service treatment records; assisted the Veteran in 
obtaining evidence; and afforded the Veteran the opportunity to 
give testimony before the Board. All known and available records 
relevant to the issues on appeal have been obtained and 
associated with the Veteran's claims file; and the Veteran has 
not contended otherwise.

The Veteran has requested that another audiology examination be 
obtained and that an examination be obtained with respect to his 
immune disorder claim. VA afforded the Veteran an audiological 
examination in December 2005, containing medical opinions as to 
the etiology of his hearing loss and tinnitus disabilities. 

The Veteran argues that the 2005 examination with respect to 
hearing loss is inadequate because the examiner ignored the 
positive evidence of record and the examiner's findings were not 
supported by reasons and bases. The Veteran noted that his 
entrance and separation examinations showed some level of hearing 
loss in service. Further, he cited a medical treatise noting 
that hearing loss at 6000Hz is often indicative of some level of 
hearing loss. However, it is very clear that the examiner 
reviewed the service entrance and separation examinations as the 
examiner specifically noted that he did so in the examination 
report. Further, it was the medical opinion of the examiner that 
the results of the Veteran's audiometric testing in service were 
reflective of normal hearing. The examiner supported his 
conclusions with respect to hearing loss by correctly noting (a 
fact undisputed by the Veteran) that STRs noted no problems with 
hearing loss and again concluding that hearing loss at separation 
was normal.

Given that the findings reported on this examination (1) clearly 
included a review of the entire claims folder, including the 
relevant service records; (2) were detailed, (3) took into 
account the Veteran's history, and (4) included a rationale for 
the examiner's conclusions, the examination is deemed adequate 
with respect to the hearing loss claim. 38 C.F.R. § 3.159(c) 
(4); Barr v. Nicholson, 21 Vet. App. 303, 307 (2007). 

The Veteran argues that the 2005 examination with respect to 
tinnitus is inadequate because the examiner ignored the positive 
evidence of record and the examiner's findings were not supported 
by reasons and bases in that the examiner failed to consider his 
lay statements as to when the tinnitus commenced. However, it is 
very clear that the examiner considered the Veteran's lay 
statements as to onset as the examiner specifically noted that he 
did so in the examination report: "[e]xact onset of tinnitus is 
unknown but veteran stated that he believes that it was present 
when he married in 1968." However, it is clear from the 
examiner's conclusion (that it was less likely that the Veteran's 
tinnitus is related to military service) that the examiner relied 
more heavily on the negative contemporaneous STRs and the history 
of the Veteran's tinnitus (intermittent in 2003 and 2005 and with 
an unusual pattern), as explained in his rationale in the final 
paragraph of his examination report. 

Given that the findings with respect to tinnitus reported on this 
examination (1) clearly included a review of the entire claims 
folder, including the relevant service records and the Veteran's 
lay statements; (2) were detailed, (3) took into account the 
Veteran's history, and (4) included a rationale for the 
examiner's conclusions, the examination is deemed adequate with 
respect to the tinnitus claim. 38 C.F.R. § 3.159(c) (4); Barr v. 
Nicholson, 21 Vet. App. 303, 307 (2007). 

The Board is mindful of the fact that the Veteran was not 
afforded a VA examination in conjunction with the immune disorder 
claim and that he believes an examination is required because he 
has "competently and credibly attested to the persistence of his 
symptoms over a long period of time." Under the VCAA, VA is 
obliged to provide an examination when the record contains 
competent evidence that the claimant has a current disability or 
signs and symptoms of a current disability, the record indicates 
that the disability or signs and symptoms of disability may be 
associated with active service; and the record does not contain 
sufficient information to make a decision on the claim. 
38 U.S.C.A. § 5103A(d). The evidence of a link between current 
disability and service must be competent. Wells v. Principi, 326 
F.3d 1381 (Fed. Cir. 2003). The threshold for the duty to 
conduct an examination is rather low. McLendon v. Nicholson, 20 
Vet. App. 79 (2006).

Nonetheless, the low threshold notwithstanding, the probative 
evidence of record did not trigger the necessity of an 
examination with respect to the immune disorder claim. The only 
evidence tending to link the Veteran's claimed immune disorder 
with his active service are his personal assertions of various 
symptoms, like infection, chills and pain, off and on through the 
years. There is nothing in the record to link his various 
complaints with a single disability/disease entity and by his own 
account, his symptoms are "intermittent". Taken together these 
statements do not constitute competent evidence that the claimant 
has a current disability or signs and symptoms of a current 
disability, nor do they show that the disability or signs and 
symptoms of a disability may be associated with active service. 
Further, his statements go beyond his recount of his 
symptomatology: he asserts an etiological linkage, which, in the 
absence of evidence that he has medical training, he is not 
competent to do. Thus, the Board finds that the duty to assist 
with an examination for the immune disorder claim was not 
triggered. See 38 C.F.R. § 3.159(c)(4).

VA has substantially complied with the notice and assistance 
requirements and the Veteran is not prejudiced by a decision on 
the claim at this time.

Relevant Law

Service connection may be granted if the evidence demonstrates 
that a current disability resulted from an injury or disease 
incurred or aggravated in active military service. 38 U.S.C.A. 
§§ 1110, 1131; 38 C.F.R. § 3.303(a). In order to prevail on the 
issue of service connection, there must be (1) medical evidence 
of a current disability; (2) medical, or in certain 
circumstances, lay evidence of in-service occurrence or 
aggravation of a disease or injury; and (3) medical evidence of a 
nexus between the claimed in-service disease or injury and the 
present disease or injury. Hickson v. West, 12 Vet. App. 247, 
253 (1999).



Hearing loss and tinnitus

For VA compensation and pension purposes, impaired hearing will 
be considered to be a disability when the auditory threshold in 
any of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz is 40 
decibels or greater; or when the auditory thresholds for at least 
3 of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz are 26 
decibels or greater; or when speech recognition scores using the 
Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385 
(2010).

Organic disease of the nervous system may be presumed to have 
been incurred in service if it is manifest to a degree of 10 
percent within one year of discharge from service. 38 U.S.C.A. 
§§ 1101, 1110, 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309.

On service entrance examination in February 1963, pure tone 
thresholds, in decibels, were as follows:





HERTZ



500
1000
2000
3000
4000
RIGHT
15
10
10

25
LEFT
15
10
10

5

There was no treatment for or diagnosis of ear problems, hearing 
loss, or tinnitus in service.

On service discharge examination in May 1967, pure tone 
thresholds, in decibels, were as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
10
10
15
10
20
LEFT
20
15
15
15
10

Puretone thresholds were 35 decibels at 6000 hertz, bilaterally.

In September 2003, the Veteran complained of decreased hearing 
and tinnitus. In October 2003, he indicated that his hearing 
loss was of gradual onset, and reported both in-service and 
recreational noise exposure. In April 2005, he reported service 
noise exposure but denied civilian and recreational noise 
exposure. He was reported to have bilateral sensorineural 
hearing loss. In August 2005, he had some scarring of his 
tympanic membranes. 

On VA examination in December 2005, pure tone thresholds, in 
decibels, were as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
25
30
25
35
45
LEFT
25
25
20
20
40

Speech recognition scores, using the Maryland CNC test, were 96 
percent in the right ear and 92 percent in the left ear.

The examiner noted that the Veteran had served in aviation supply 
from 1963 to 1967, and that formal hearing tests on service 
entrance and separation had shown hearing within normal limits, 
and that there was no mention in the service treatment records of 
hearing loss, ear problems, or tinnitus. The Veteran had been 
seen by VA in 2003 and 2005, with the results indicating mild 
hearing loss with a conductive component. Evaluation in 2003 had 
indicated a history of ear infections throughout childhood and 
occasional tinnitus in both ears. The Veteran reported that he 
had worked on the flight line in service in aviation supply, and 
that he was exposed to loud jet engine noise. He reported ear 
infections in conjunction with colds as an adult, and could not 
remember if he had ear infections as a child. The exact onset of 
the Veteran's tinnitus was unknown to the Veteran, but he 
believed that it had been present when he was married in 1968. 

The examiner indicated that based on the formal hearing tests at 
induction and separation, which both indicated normal hearing in 
both ears, it was less than likely that the Veteran's current 
hearing loss was related to his military service. He also 
indicated that given the normal hearing at separation and no 
mention of tinnitus in service treatment records, it was less 
than likely that the Veteran's tinnitus was related to service. 

Based on the evidence, the Board concludes that service 
connection is not warranted for bilateral hearing loss 
disability. It was not shown in service or for years after 
service, and the examiner in December 2005 indicated that it was 
less than likely that it was related to service after considering 
induction and separation hearing tests. The Veteran argues that 
he had hearing loss in service as reflected by the service 
medical records, and he cites a study to the effect that hearing 
loss at 6000 Hertz if often indicative of some level of hearing 
loss. Moreover, he feels that his hearing loss is service 
related. However, the VA physician who examined the Veteran in 
2005 examined the Veteran himself, including his in-service 
audiometry, and concluded that he did not have hearing loss in 
service and that his current hearing loss disability is probably 
not service related. 

The Veteran is competent to report symptoms like problems hearing 
because this requires only personal knowledge as it comes to him 
through his senses. Layno v. Brown, 6 Vet. App. 465, 470 (1994). 
However, the Board finds that the Veteran's statements with 
respect to the origins of his hearing loss are not credible. See 
Caluza v. Brown, 7 Vet. App. 498, 510-511 (1995) ("Credibility 
can be genuinely evaluated by a showing of interest, bias, or 
inconsistent statements, and the demeanor of the witness, 
official plausibility of the testimony, and the consistency of 
the witness' testimony"). This is so because the STRs are 
negative for complaints of hearing loss and the Veteran filed a 
compensation claim shortly after service (in 1968) for other 
disabilities but not for hearing loss. As the Veteran's 
statements are contradicted by contemporaneous evidence, the 
Veteran's statements are deemed not credible. 

Also based on the evidence, the Board concludes that service 
connection is not warranted for tinnitus. It was not shown in 
service or for years after service, and the examiner in December 
2005 indicated that it was less than likely related to the 
Veteran's service after considering the Veteran's normal hearing 
at service separation and no mention of tinnitus in service 
treatment records. 

The Veteran's asserted in December 2005 that he thought he had 
tinnitus when he was married in 1968, shortly after service. The 
Veteran is competent to report symptoms like ringing in the ears 
because this requires only personal knowledge as it comes to him 
through his senses. Layno, 6 Vet. App. at 470 (1994). However, 
the Board finds that the Veteran's statements with respect to the 
origins of his hearing loss are not credible. This is so because 
the STRs are negative for complaints of tinnitus and the Veteran 
filed a compensation claim shortly after service (in 1968) for 
other disabilities but not for tinnitus. As the Veteran's 
statements are contradicted by contemporaneous evidence, the 
Veteran's statements with respect to the origins of tinnitus are 
deemed not credible. 

Thus, the preponderance of the evidence is against the claims and 
there is no doubt to be resolved. 38 U.S.C.A. § 5107; Gilbert v. 
Derwinski, 1 Vet. App. 49, 55 (1991).

Immune system

Regarding the Veteran's claim for service connection for immune 
system disorder, he asserts that since being in Vietnam, his 
immune system breaks down, causing intermittent periods of 
symptoms like infection, chills, and pain throughout his body. 

Service treatment records, including the enlistment physical 
examination and the separation physical examination are silent 
for complaints or findings of any immune system disorder in 
service. The Veteran was treated for a viral upper respiratory 
infection, gastroenteritis, a cold, flu syndrome, and urinary 
complaints in service. He was normal on service discharge 
examination in May 1967. 

Post service medical records likewise fail to note any immune 
system disorder, although he had ailments in the years after 
service as reflected by treatment records. Since the claim was 
filed on September 30, 2005, he was treated for pharyngitis in 
August 2007, and he reported in November 2007 that he had had an 
infection in August 2007 which had resolved. He was treated for 
uvulitis in November 2007. In January 2008, he indicated that 
those ailments had resolved, but that his uvula was now swollen 
again. A different antibiotic was prescribed. In October 2008, 
he consulted for burning up, inability to keep fluids in him, 
chills, and dehydration. In May 2009, he reported a shoulder 
infection and that a cardiac problem had developed from it. 

Based on review of the medical evidence above the Board finds 
that there is no competent medical evidence showing an immune 
disorder. The Board has also considered the lay evidence. The 
Veteran clearly believes himself to have an immune disorder, but 
lay persons are not competent to opine as to medical etiology or 
render medical opinions. Barr v. Nicholson, 21 Vet. App. 303 
(2007). Lay evidence can be competent and sufficient to 
establish a diagnosis of a condition when (1) a layperson is 
competent to identify the medical condition, (2) the layperson is 
reporting a contemporaneous medical diagnosis, or (3) lay 
testimony describing symptoms at the time supports a later 
diagnosis by a medical professional. Jandreau v. Nicholson, 492 
F.3d 1372 (Fed. Cir. 2007). In this case none of the three 
circumstances cited in Jandreau apply. 

There being no competent and credible evidence of an immune 
disorder the Board finds that service connection must be denied. 
Brammer, 3 Vet. App. 223, 225.

The Veteran also asserts that his claimed immune disorder is 
secondary to his presumed exposure to "toxins" during service. 
A veteran who served in the Republic of Vietnam during the 
Vietnam era shall be presumed to have been exposed during such 
service to an herbicide agent (i.e., Agent Orange). 38 C.F.R. 
§ 3.307(a)(6)(iii). Furthermore, the diseases listed at 
38 C.F.R. § 3.309(e) shall, in turn, be presumptively service 
connected if this requirement is met, even though there is no 
record of such disease during service.

The Secretary of Veterans Affairs has determined that there is no 
positive association between exposure to herbicides and any other 
condition for which the Secretary has not specifically determined 
that a presumption of service connection is warranted. See 
Notice, 72 Fed. Reg. 32395-407 (June 12, 2007). While it is 
unclear whether the Veteran served in the Republic of Vietnam, 
such a determination need not be reached as the Secretary has 
specifically determined that immune system disorders are not 
associated with herbicide exposure and, as such, are not subject 
to service connection on a presumptive basis. See 68 Fed. Reg. 
14,567 (March 26, 2003). Thus, even if the Veteran served in 
Vietnam, the preponderance of the probative evidence is against 
service connection secondary to presumed Agent Orange exposure. 
38 C.F.R. § 3.309(e). 

Thus, the preponderance of the evidence is against the claim and 
there is no doubt to be resolved. 38 U.S.C.A. § 5107; Gilbert v. 
Derwinski, 1 Vet. App. 49, 55 (1991).


ORDER

Service connection for bilateral hearing loss is denied.

Service connection for tinnitus is denied.

Service connection for an immune system disorder is denied.


REMAND

The Veteran claims service connection for Parkinson's disease 
based on working around toxins while in Vietnam. Effective 
August 31, 2010, VA amended 38 C.F.R. § 3.309(e) to add 
Parkinson's disease to the list of diseases associated with 
exposure to certain herbicide agents. Diseases Associated With 
Exposure to Certain Herbicide Agents (Hairy Cell Leukemia and 
Other Chronic B-Cell Leukemias, Parkinson's Disease and Ischemic 
Heart Disease), 75 Fed. Reg. 53,202 (Aug. 31, 2010) The intended 
effect of this amendment is to establish presumptive service 
connection for these diseases based on herbicide exposure. 

Service treatment records are silent for reference to Parkinson's 
disease, and the Veteran was first treated for a tremor in 
December 2005. Parkinson's disease has been diagnosed and 
treated repeatedly since then. 

There were four attempts to obtain service personnel records in 
2009, as late as November 2009, with no response provided. 
Further attempts to obtain service personnel records should be 
made. Thereafter, if necessary, a VA examination should be 
obtained as indicated below. 

Accordingly, the case is REMANDED for the following action:

1. Obtain the Veteran's service personnel 
records or a definitive indication that 
they are unavailable. 

2. Thereafter, if and only if the 
service personnel records reveal 
that the Veteran did not serve in 
the Republic of Vietnam during the 
Vietnam era, schedule the Veteran for 
an appropriate VA examination to 
address the nature and etiology of his 
Parkinson's disease. The claims folder 
must be made available to and reviewed 
by the examiner in conjunction with the 
examination. Any medically indicated 
tests should be performed.

Based upon the examination results and 
a review of the claims folder, the 
examiner should provide an opinion as 
to whether it is at least as likely as 
not (a 50 percent or more probability) 
that the Veteran's current Parkinson's 
disease is related to service, 
including any exposure to toxins in 
service. The examiner should provide a 
rationale for all opinions provided.
3. After completion of the above, the RO 
should review the expanded record and 
determine if service connection is 
warranted for Parkinson's disease. The 
Veteran and his representative should 
be furnished a supplemental statement 
of the case addressing any issue which 
remains denied. After they are 
afforded an opportunity to respond, the 
case should be returned to the Board 
for appellate review.

The appellant has the right to submit additional evidence and 
argument on the matter or matters the Board has remanded. 
Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law 
requires that all claims that are remanded by the Board of 
Veterans' Appeals or by the United States Court of Appeals for 
Veterans Claims for additional development or other appropriate 
action must be handled in an expeditious manner. See 38 U.S.C.A. 
§§ 5109B, 7112 (West Supp. 2009).




______________________________________________
M. C. GRAHAM
Acting Veterans Law Judge, Board of Veterans' Appeals



 Department of Veterans Affairs