Arthur HICKSON, Appellant,

v.

Togo D. WEST, Secretary of Veterans Affairs, Appellee.

No. 96–1669.

United States Court of Appeals for Veterans Claims.

March 16, 1999.

Arthur Hickson, pro se.

Leigh A. Bradley, General Counsel; Ron Garvin, Assistant General Counsel; Jacquelin M. Sims, Acting Deputy Assistant General Counsel; and Darryl A. Joe were on pleadings for appellee.

Before FARLEY, IVERS, and STEINBERG, Judges.

FARLEY, Judge:

On November 27, 1996, the Board of Veterans' Appeals (BVA or Board) issued a decision which (1) incorporated by reference a 1995 Board determination that new and material evidence had been presented to reopen a claim for service connection for a lower back condition, and (2) found that the appellant had failed to submit a well-grounded claim for that condition. On August 17, 1998, the Court affirmed the BVA decision to the extent that it disallowed the claim, but held that the BVA had incorrectly determined that new and material evidence had been presented to reopen the claim. *Hickson v. West,* 11 Vet.App. 374 (1998). In so holding, the Court noted that the test for materiality, first set out in *Colvin v. Derwinski,* 1 Vet. App. 171, 174 (1991), is whether the newly presented evidence was probative and, if so, whether there was a reasonable possibility that the outcome of the claim would be changed as a result of all the evidence of record, both new and old.

On August 26, 1998, the appellant submitted a timely motion for reconsideration. Shortly thereafter, on September 11, 1998, the United States Court of Appeals for the Federal Circuit (Federal Circuit) rejected this Court's *Colvin* test for materiality. *See Hodge v. West,* 155 F.3d 1356, 1360-62 (Fed. Cir.1998). In *Hodge,* the Federal Circuit held that the *Colvin* requirement was not only unnecessarily stringent but also inconsistent with the promulgated regulation on point, 38 C.F.R. § 3.156(a) (1998), which merely requires that the newly presented evidence "be so significant that it must be considered in order to fairly decide the merits of the claim." *Id.* For the reasons that follow, the appellant's motion is granted, the August 17, 1998, decision of the Court is withdrawn, and this decision affirming the November 1996 BVA decision is issued in its stead.

## I. BACKGROUND

The appellant, Arthur Hickson, served on active duty in the U.S. Air Force from July 1968 to February 1969. *See* Record (R.) at 5. The appellant's enlistment examination revealed mild pes planus. R. at 12. His service medical records (SMRs) documented hip pain with the impression of a strain in July 1968 (R. at 14), a provisional diagnosis of an L-5 strain in July 1968 (R. at 15), low back pain with no injury noted in August 1968 (R. at 16, 18, 19), and low back pain in October 1968 with a suggestion that perhaps the appellant was malingering (R. at 17). The appellant also complained of a shoulder muscle strain in October 1968 (R. at 20) and back pain in December 1968 (R. at 21–22). In January 1969, the appellant was processed for an administrative discharge. His discharge examination revealed mild pes planus, and a full orthopedic workup of his back, including x-rays which were normal, found no organic disease and a full range of motion. R. at 23–24. The examiner also noted borderline mental retardation with suspected recruiter influence in passing the qualifying test. R. at 24–25, 27.

In March 1969, the appellant submitted a claim for a low back disability. R. at 44–47. A special orthopedic examination in April 1969 revealed a Grade II swayback posture, a supple spine, and pain-free motion. R. at 53. The neurological examination of the lower extremities was "completely normal" and x-rays revealed no degenerative arthritic changes. *Id.* However, unilateral spondylolysis on the left was shown by x-ray. The diagnosis was postural low back strain. *Id.*

A radiographic report noted a "transitional vertebra at the S1 level with fusion with the sacrum on the right and not on the left." R. at 54. Body heights and disc spaces were intact with no evidence of spondylolisthesis, and the examiner's impression was "[t]ransitional vertebrae at the S1 level, otherwise normal lumbar spine." *Id.* His claim was denied in a June 1969 rating decision in which the VA regional office (RO) found that the appellant's spondylolysis with postural low back strain was a constitutional or developmental abnormality and therefore was not a disability under the law. R. at 59.

The appellant thereafter submitted various statements and hospital records explaining that he had been enrolled in a karate school prior to service, that he had had no back problems prior to service, and that he had been treated for back problems during service at a private hospital in December 1968. R. at 62–73. A March 1970 x-ray report documented partial lumbarization of S1, intact apophysial joints, and no significant change from the April 1969 x-ray. R. at 83. Following a VA orthopedic examination, he was diagnosed with left spondylolysis and postural low back strain. R. at 84. In August 1970, the Board issued a decision affirming the denial of service connection for a low back disorder. R. at 89–92. The Board concluded that the appellant's spondylolysis and postural low back strain were "congenital or developmental defects and not diseases or injuries for which service connection may be granted." R. at 92. The Board also found that the appellant's low back disorder was not aggravated in service. *Id.*

In May 1972, the appellant submitted various medical records from 1970 and 1971. A May 1970 examination found that the appellant had grade III lumbar lordosis and generally poor posture, but that he had a full range of motion and no neurologic abnormalities. R. at 97. In May 1972, a confirmed rating decision was issued. R. at 101. Following a 1973 welfare examination, the appellant submitted the report, which documented lumbar disorder. R. at 105. A June 1974 x-ray examination noted "transitional vertebra at S1 with some lumbarization and corresponding narrowing of the first sacral inter-space," but no neurological disease was found. R. at 117–19. There also appears to be a handwritten notation of "status, arthralgia, lower back, post traumatic," but there is no comment on the nature of the underlying trauma. R. at 122. An October 1974 private examination documented nothing new regarding the appellant's back. R. at 124–33. A November 1979 VA examination noted "six lumbar vertebral bodies with partial sacralization on the right." R. at 139. The examination was otherwise unremarkable. A December 1979 VA compensation and pension examination revealed "status post-trauma of lumbosacral spine with minimal residual." R. at 149, 152. In February 1980, Dr. John Terry submitted a statement indicating that the appellant was unable to engage in substantially gainful employment because of low back syndrome, tendinitis, and colostomy due to an old gunshot wound to the abdomen. R. at 154.

The appellant sought to reopen his low back claim in July 1981, stating that he had had no preservice back condition. R. at 157. His mother and sister submitted similar statements. R. at 160–61. In further support of his application, he submitted a letter dated June 1981 from Dr. John Terry, who opined that the appellant's back condition was not developmental or congenital, but was the result of trauma in service. R. at 159. In an August 1981 rating decision, the RO concluded that new and material evidence had not been presented and declined to reopen his claim. R. at 165. A November 1981 statement from a chiropractor documented "[c]hronic closed dislocations of L4 and L3 with lumbopelvic myotonia, complicated by sacralization of L5, accompanied by vertebrogenic lumbalgia and recurrent lower limb vertebrogenic radicular syndromes." R. at 169. The chiropractor also noted that the "congenital status of L5 ... cannot be corrected." *Id.* A September 1982 BVA decision denied service connection for the back condition. R. at 183–90. The Board found that the additional evidence did not show incurrence or aggravation of a back disability in service. R. at 188.

In November 1993, the appellant was examined for back pain. R. at 195. In a

December 1993 rating decision, the RO determined that new and material evidence had not been presented to reopen the appellant's claim for a back condition. R. at 223. The appellant filed a Notice of Disagreement and a personal hearing was held. In a December 1995 decision, the Board found that the June 1981 statement from Dr. Terry, as well as other evidence that documented a current back condition, constituted new and material evidence to reopen the claim. As a result, the Board remanded the claim to allow the RO to obtain any additional available treatment records, to allow an examination by a board-certified orthopedist, and to readjudicate the claim. R. at 282–89.

Records documenting unrelated problems were then presented (R. at 296–306), as well as records documenting back pain (R. at 307, 311, 318, 320, 322). A November 1993 x-ray examination noted shallow lumbar lordosis and no significant osseous abnormality. R. at 324. An April 1996 VA spine examination revealed decreased disc space at L5–S1 with no significant spondylosis, and an impression of degenerative disc disease with chronic low back pain. R. at 335. The appellant denied any significant trauma. The examiner opined that "[o]verall, [the appellant's] physical exam is quite normal." *Id.* He further opined that "[i]t would be quite difficult to prove an association between the appellant's vague assertions and his present condition." *Id.* Thereafter, the appellant complained that the examiner did not review his claims file. R. at 337. In May 1996, an orthopedic specialist opinion was requested. R. at 340–41. After reviewing the claims file, the specialist opined that "there is no indication of any relationship between the current problems and any service activity." R. at 344. It was felt that the appellant's back condition was "totally unrelated to his service time." *Id.* The RO then issued a Supplemental Statement of the Case and found that "the veteran's claim remains disallowed as there is no evidence of a nexus between current back complaints and any incident in service." R. at 349. In November 1996, the Board issued the decision that is the subject of this appeal. The Board concluded that the appellant's claim for service connection for a low back

disorder was not well grounded and denied the claim. This appeal followed.

## II. ANALYSIS

### A. Reopening

■ Before reopening a claim, the Board is required to preliminarily decide that new and material evidence has been presented. *See* 38 U.S.C. §§ 5108, 7104(b); *Barnett v. Brown,* 83 F.3d 1380 (Fed.Cir.1996) (holding "that the Board does not have jurisdiction to consider a claim which it previously adjudicated unless new and material evidence is presented"); *see also Butler v. Brown,* 9 Vet.App. 167, 171 (1996). *But cf.* 38 U.S.C. § 7111 (Board may review final decision for clear and unmistakable error). Incorporated by reference in the decision on appeal (R. at 5) was a determination by the Board that it had jurisdiction by virtue of the presentment of new and material evidence. In fact, in its non-final December 1995 decision, which had remanded the claim to the RO, the Board specifically determined that there was new and material evidence that required reopening of the appellant's low back claim. As a preliminary matter, this Court must first determine whether the Board erred in determining that new and material evidence has been presented to reopen the appellant's claim—a prerequisite to the BVA's exercise of jurisdiction over the merits of the claim. *See Barnett* and *Butler,* both *supra.*

■ When reopening a final decision, the Board must first determine whether the evidence presented or secured since the last final disallowance is "new and material." *Id.* If it is, the Board must then reopen the claim and "evaluate the merits of the veteran's claim in light of *all* the evidence, both new and old." *Id.; Jones v. Derwinski,* 1 Vet. App. 210, 215 (1991). "New" evidence is evidence that is not "merely cumulative" of other evidence in the record. *See Evans v. Brown,* 9 Vet.App. 273, 283 (1996); *Blackburn v. Brown,* 8 Vet.App. 97, 102 (1995); *Cox v. Brown,* 5 Vet.App. 95, 98 (1993). The test for "material" evidence adopted by this Court in *Colvin, supra,* and applicable at the time of the Board's 1995 and 1996 decisions and the Court's August 1998 decision, in-

quired into whether there was a reasonable possibility that the additional evidence presented, when viewed in the context of all the evidence, both new and old, would change the outcome of the claim. As noted at the outset, this test was recently invalidated by the Federal Circuit in *Hodge*, which now requires the newly presented evidence to be so significant that it must be considered to fairly decide the claim.

■ Along with the change in the applicable test also came the need to reevaluate the standard of review employed by this Court when confronted with BVA denials of reopenings. Prior to *Hodge*, determinations as to the existence of new and material evidence under 38 U.S.C. § 5108 were made by this Court de novo. *See Colvin, supra; Spencer v. Brown*, 4 Vet.App. 283, 287 (1993), *aff'd*, 17 F.3d 368 (Fed.Cir.1994); *Masors v. Derwinski*, 2 Vet.App. 181, 185 (1992). The de novo standard of review is, however, no longer generally applicable to such determinations. In *Elkins v. West*, 12 Vet.App. 209 (1999) (en banc), we held that "new-and-material-evidence determinations generally will now be reviewed under a deferential 'clearly erroneous' standard." *Id.*, 12 Vet.App. at 217. Moreover, where evidence was correctly found by the BVA to be new and material under the more stringent *Colvin* test, it would necessarily be new and material under the lesser stringent *Hodge* test. *See id.*, 12 Vet.App. at 217–18; *Fossie v. West*, 12 Vet. App. 1, 4 (1998). Therefore, affording the BVA's 1995 determination the deference to which it is entitled, we hold that the appellant's claim was properly reopened. *See Elkins*, 12 Vet.App. at 218 ("In such a case (3)27 the Court will generally defer to the Board's decision to reopen and move on to consider the merits.").

### B. Well–Grounded Claim

When the Board determines that new and material evidence had been presented, it next must determine, as part of its "review of the former disposition of the claim" under 38 U.S.C. § 5108, whether the appellant's claim,

as reopened, is well grounded. *See generally id.*, 12 Vet.App. at 219; *Winters v. West*, 12 Vet.App. 203, 205–06 (1999) (en banc). Having determined that new and material evidence had been presented in December 1995, the Board in November 1996 determined that the appellant's claim was not well grounded. We disagree.

■ Section 5107(a) of title 38, U.S.Code, provides in pertinent part: "[A] person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." The determination of whether a claim is well grounded is a matter that this Court reviews de novo. *See, Grivois v. Brown*, 6 Vet.App. 136, 139 (1994). A well-grounded claim is "a plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of [§ 5107(a) ]." *Murphy v. Derwinski*, 1 Vet. App. 78, 81 (1990). "The quality and quantity of the evidence required to meet this statutory burden of necessity will depend upon the issue presented by the claim." *Grottveit v. Brown*, 5 Vet.App. 91, 92–93 (1993). Where the determinative issue involves medical causation or a medical diagnosis, competent medical evidence to the effect that the claim is "plausible" is generally required. *Id.* at 93. In *Caluza v. Brown*, the Court held that for a service-connected claim to be well grounded, there generally must be (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of incurrence or aggravation of a disease or injury in service; and (3) medical evidence of a nexus between the claimed in-service injury or disease and the current disability. 7 Vet.App. 498, 506 (1995), *aff'd*, 78 F.3d 604 (Fed.Cir.1996) (table); *see also Epps v. Brown*, 9 Vet.App. 341 (1996), *aff'd sub nom. Epps v. Gober*, 126 F.3d 1464 (Fed.Cir.1997), *cert. denied*, — U.S. —, 118 S.Ct. 2348, 141 L.Ed.2d 718 (1998).

■ Where the determinative issue is factual rather than one requiring medical

judgment, lay testimony may constitute sufficient evidence to well ground the claim. *Grottveit*, 5 Vet.App. at 93. Similarly, lay evidence concerning the manifestations of a chronic condition during service or within a presumption period may suffice. *See Caldwell v. Derwinski*, 1 Vet.App. 466, 469 (1991). When a condition is not chronic and there is no medical evidence of a causal nexus, continuity of symptomatology, which may be shown by medical evidence or lay testimony, would be required. *See* 38 C.F.R. § 3.303(b) (1998); *Savage v. Gober*, 10 Vet.App. 488, 495–97 (1997); *Godfrey v. Brown*, 7 Vet.App. 398, 406 (1995). In determining whether a claim is well grounded, only the evidence in support of the claim is evaluated and that evidence is presumed to be credible. *See Elkins*, 12 Vet.App. at 219.

 Here, the appellant presented (1) service medical evidence showing treatment for a low back problem; (2) an April 1996 VA examination diagnosing degenerative disc disease; and (3) a statement from Dr. Terry linking the appellant's current condition to his period of service. Accordingly, all three *Caluza* elements are present. In light of the "rather low" threshold for well grounding a claim, *see White v. Derwinski*, 1 Vet.App. 519, 521 (1991), the Court concludes on de novo review, presuming the credibility of the evidence in support of the claim, that the appellant's reopened claim was well grounded and that, in concluding otherwise, the BVA erred. That error, however, was not prejudicial to the appellant.

## C. Decision on the Merits

 Notwithstanding the Board's statement that it found that the appellant's claim was not well-grounded, the Court has concluded from a review of the Board's decision and the record that the Board in fact and in law rendered a decision on the merits of the claim. In order to prevail on the issue of service connection on the merits once a claim has been well grounded, there must be medical evidence of a current disability, *see Rabideau v. Derwinski*, 2 Vet.App. 141, 143 (1992); medical or, in certain circumstances, lay evidence of in-service incurrence or ag-

gravation of a disease or injury; and medical evidence of a nexus between the claimed in-service disease or injury and the present disease or injury. *See Caluza*, 7 Vet.App. at 506; *see also Heuer v. Brown*, 7 Vet.App. 379, 384 (1995); *Grottveit*, 5 Vet.App. at 93. The analysis, however, is not the same at both the well-groundedness stage and the merits stage.

> [T]he evidence submitted in support of a claim must ... be accepted as true for the purpose of determining whether the claim is well grounded.... Borrowing from the analysis of *Justus* [*v. Principi*, 3 Vet.App. 510 (1992)], this presumption in the instant case is made *only for the purpose of determining whether* [the claim is well grounded].... In the adjudication that follows, the Board, having accepted provisionally for well-groundedness purposes the credibility of the evidence, then must determine as a question of fact, both the weight and credibility of that evidence.

*Robinette v. Brown*, 8 Vet.App. 69, 76 (1995). In addition, a finding as to service connection is a finding of fact reviewed under the "clearly erroneous" standard set forth in 38 U.S.C. § 7261(a)(4). *See Swann v. Brown*, 5 Vet.App. 229, 232 (1993).

 As documented by its statement of reasons or basis, the Board engaged in the type of analysis that is proper only at the merits adjudication stage. Specifically, it found that the appellant's testimony as to in-service events that may have caused his current complaint was vague and nonspecific. The BVA also discounted the probity of Dr. Terry's statement as to nexus (R. at 159) because of the facts that it linked the appellant's back pain to an unspecified trauma and that it was not supported by clinical medical records. The Board further found that Dr. Terry's conclusion was outweighed by the 1996 VA examination that had concluded that the appellant's back problems are not related to his period of service. R. at 8, 9. Because there is a plausible basis in the record for these determinations and the BVA's conclusion, the Court holds that the BVA decision is not clearly erroneous.

Finally, although the Board may have erred in finding the claim to be not well grounded, the appellant was not prejudiced because he had already enjoyed the full benefit of VA's duty to assist. 38 U.S.C. § 7261(b) (The Court is required to "take due account of the rule of prejudicial error." ). Where an appellant presents a well-grounded claim for VA benefits, VA has a statutory duty to assist the appellant "in developing the facts pertinent to the claim." 38 U.S.C. § 5107(a); *see Allday v. Brown*, 7 Vet.App. 517, 526 (1995); *Littke v. Derwinski*, 1 Vet.App. 90, 91–92 (1990); *Murphy* 1 Vet.App. at 81–82 (once claimant submits plausible claim, i.e., one which is meritorious on its own or capable of substantiation, the Secretary is obligated to assist in developing facts pertinent to claim); *see also Grottveit, supra.* Here, VA complied with the duty to assist when, after the Board's 1995 decision to reopen, the claim was remanded to the RO for further development, VA examinations, and adjudication. Likewise, for the Court to remand the matter to the Board for an adjudication on the merits, which in essence has already been done, would serve only to impose unnecessary burdens upon the BVA with no benefit flowing to the appellant. *See Soyini v. Derwinski*, 1 Vet.App. 540, 546 (1991).

### III. CONCLUSION

For the reasons set forth above, the Court's August 17, 1998, decision is withdrawn and this opinion is substituted therefor. The November 27, 1996, decision of the Board of Veterans' Appeals, to the extent it disallowed the appellant's claim, is AFFIRMED. *See Edenfield v. Brown*, 8 Vet. App. 384, 391 (1995) (en banc).