Citation Nr: 1132144 
Decision Date: 08/31/11 Archive Date: 09/07/11

DOCKET NO. 08-04 974 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in San Juan, the Commonwealth of Puerto Rico


THE ISSUES

1. Entitlement to service connection for an acquired psychiatric disorder.

2. Entitlement to service connection for left ear hearing loss.


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESSES AT HEARING ON APPEAL

Appellant and son




ATTORNEY FOR THE BOARD

K. A. Kennerly, Counsel


INTRODUCTION

The appellant served on active duty from October 1940 to July 1945 and from November 1945 to November 1949.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a May 2007 rating decision of the San Juan, Puerto, Rico, Regional Office (RO) of the Department of Veterans Affairs (VA), which denied the benefits sought on appeal. The appellant submitted a notice of disagreement with this determination in June 2007, and timely perfected his appeal in February 2008.

In February 2010, the appellant presented sworn testimony during a Travel Board hearing in San Juan, Puerto Rico, which was chaired by the undersigned Veterans Law Judge. A transcript of that hearing has been associated with the appellant's VA claims file.

These claims came before the Board in January 2011, at which time they were remanded to the Appeals Management Center (AMC) for further evidentiary development. See Stegall v. West, 11 Vet. App. 268 (1998). Such development having been accomplished, the claims have been returned to the Board for adjudication.

Clarification of Issue on Appeal

The Board notes that recent case law indicated that a claim for a mental health disability includes any mental disability that may reasonably be encompassed by the claimant's description of the claim, reported symptoms, and the other information of record. See Clemons v. Shinseki, 23 Vet. App. 1, 5-6 (2009). Given the holding in Clemons and based upon a review of the appellant's examination and treatment records, the Board has recharacterized the appellant's initial claim of entitlement to service connection for depressive neurosis, to the broader issue of entitlement of service connection for an acquired psychiatric disability, as is reflected on the cover page.

Please note this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2010). See 38 U.S.C.A. § 7107(a)(2) (West 2002).


FINDINGS OF FACT

1. The preponderance of the evidence is against a finding that the appellant currently suffers from an acquired psychiatric disorder that is the result of a disease or injury in active duty service.

2. The preponderance of the evidence supports a finding that the appellant currently suffers from left ear hearing loss as a result of acoustic trauma in active duty service.


CONCLUSIONS OF LAW

1. An acquired psychiatric disorder was not incurred in or aggravated by active duty service. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1131 (West 2002); 38 C.F.R. §§ 3.303, 3.304 (2010).

2. A left ear hearing loss disability was incurred in active duty service. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1131 (West 2002); 38 C.F.R. §§ 3.303, 3.307, 3.309, 3.385 (2010).




 (CONTINUED ON NEXT PAGE
REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Board has thoroughly reviewed all the evidence in the appellant's claims file. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, the evidence submitted by the appellant or on his behalf. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (the Board must review the entire record, but does not have to discuss each piece of evidence). The analysis below focuses on the most salient and relevant evidence and on what this evidence shows, or fails to show, on the claims. The appellant must not assume that the Board has overlooked pieces of evidence that are not explicitly discussed herein. See Timberlake v. Gober, 14 Vet. App. 122 (2000) (the law requires only that the Board address its reasons for rejecting evidence favorable to the appellant). 

The Board must assess the credibility and weight of all evidence, including the medical evidence, to determine its probative value, accounting for evidence, which it finds to be persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the appellant. Equal weight is not accorded to each piece of evidence contained in the record; every item of evidence does not have the same probative value. When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the appellant prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. See Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

I. The Veterans Claims Assistance Act of 2000 (VCAA)

With respect to the appellant's claim of entitlement to service connection for an acquired psychiatric disorder, VA has met all statutory and regulatory notice and duty to assist provisions. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2002); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326 (2010).


Under the VCAA, when VA receives a complete or substantially complete application for benefits, it is required to notify the claimant and his representative, if any, of any information and medical or lay evidence that is necessary to substantiate the claim. See 38 U.S.C.A. § 5103(a) (West 2002); 38 C.F.R. § 3.159(b) (2010); Quartuccio v. Principi, 16 Vet. App. 183 (2002). In Pelegrini v. Principi, 18 Vet. App. 112, 120-21 (2004) (Pelegrini II), the United States Court of Appeals for Veterans Claims (Court) held that VA must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 

Prior to initial adjudication of the appellant's claim, a letter dated in February 2007 fully satisfied the duty to notify provisions. See 38 U.S.C.A. § 5103(a) (West 2002); 38 C.F.R. § 3.159(b)(1) (2010); Quartuccio, at 187. This notice letter also informed the appellant of how VA determines the appropriate disability rating or effective date to be assigned when a claim is granted, consistent with the holding in Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006).

All the law requires is that the duty to notify is satisfied and that claimants are given the opportunity to submit information and evidence in support of their claims. Once this has been accomplished, all due process concerns have been satisfied. See Bernard v. Brown, 4 Vet. App. 384 (1993); Sutton v. Brown, 9 Vet. App. 553 (1996); see also 38 C.F.R. § 20.1102 (2010) (harmless error). In view of the foregoing, the Board finds that the appellant was notified and aware of the evidence needed to substantiate his claim, as well as the avenues through which he might obtain such evidence, and of the allocation of responsibilities between himself and VA in obtaining such evidence. Accordingly, there is no further duty to notify. 

The Board also concludes VA's duty to assist has been satisfied. The appellant's service treatment records and VA medical records are in the file. Private medical records identified by the appellant have been obtained, to the extent possible. The appellant has at no time referenced outstanding records that he wanted VA to obtain or that he felt were relevant to the claim.


The duty to assist also includes providing a medical examination or obtaining a medical opinion when such is necessary to make a decision on the claim, as defined by law. The record indicates that the appellant participated in a VA examination in May 2011 and the results from that examination have been included in the claims file for review. The examination involved a review of the claims file, a thorough examination of the appellant, and an opinion that was supported by sufficient rationale. Therefore, the Board finds that the examination is adequate for rating purposes. See Barr v. Nicholson, 21 Vet. App. 303, 311 (2007) (affirming that a medical opinion is adequate if it provides sufficient detail so that the Board can perform a fully informed evaluation of the claim). Given the foregoing, the Board finds that the VA has substantially complied with the duty to obtain the requisite medical information necessary to make a decision on the appellant's claim.

Additionally, the Board finds there has been substantial compliance with its January 2011 remand directives. The Board notes the Court's recent holding stating, "only substantial compliance with the terms of the Board's engagement letter would be required, not strict compliance." See D'Aries v. Peake, 22 Vet. App. 97, 105 (2008); see also Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (holding that there was no Stegall (Stegall v. West, 11 Vet. App. 268) violation when the examiner made the ultimate determination required by the Board's remand.) The record indicates that the AMC scheduled the appellant for a medical examination and the appellant attended that examination. The AMC later issued a supplemental statement of the case in May 2011. Based on the foregoing, the Board finds that the AMC substantially complied with the mandates of its remand. See Stegall, supra, (finding that a remand by the Board confers on the appellant the right to compliance with its remand orders). Therefore, in light of the foregoing, the Board will proceed to review and decide the claim based on the evidence that is of record consistent with 38 C.F.R. § 3.655 (2010).

As there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of this case, the Board finds that any such failure is harmless. See Newhouse v. Nicholson, 497 F.3d 1298 (Fed. Cir. 2007). Importantly, the Board notes that the appellant is represented in this appeal. See Overton v. Nicholson, 20 Vet. App. 427, 438 (2006). The appellant has submitted argument and evidence in support of the appeal. Based on the foregoing, the Board finds that the appellant has had a meaningful opportunity to participate in the adjudication of his claim such that the essential fairness of the adjudication is not affected.

With respect to the appellant's claim of entitlement to service connection for left ear hearing loss, he was sent an appropriate notice letter in February 2007. The Board need not, however, discuss the sufficiency of either the VCAA notice letter or VA's development of the claim in light of the fact that the Board is granting the claim. Thus, any potential error on the part of VA in complying with the provisions of the VCAA has essentially been rendered moot by the Board's grant of the benefit sought on appeal.

Accordingly, the Board will proceed to a decision as to the issues on appeal.

II. The Merits of the Claims

Governing Law and Regulations

Generally, service connection may be granted for disability or injury incurred in or aggravated by active military service. See 38 U.S.C.A. § 1110 (West 2002); 38 C.F.R. § 3.303 (2010).

In order to establish service connection for the claimed disorder, there must be (1) medical evidence of a current disability; (2) medical, or in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the current disability. See Hickson v. West, 12 Vet. App. 247, 253 (1999). The determination as to whether these requirements are met is based on an analysis of all the evidence of record and the evaluation of its credibility and probative value. See Baldwin v. West, 13 Vet. App. 1, 8 (1999).



For the showing of chronic disease in service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time, as distinguished from merely isolated findings or a diagnosis including the word "chronic." When the disease identity is established, there is no requirement of an evidentiary showing of continuity. Continuity of symptomatology is required only where the condition noted during service is not, in fact, shown to be chronic or where the diagnosis of chronicity may be legitimately questioned. See 38 C.F.R. § 3.303(b) (2010).

A. Acquired Psychiatric Disorder

With respect to Hickson element (1), current disability, the evidence demonstrates that the appellant has diagnoses of depressive neurosis, anxiety, depression, and dementia. See Treatment Records, generally. Accordingly, element (1) is clearly met. See Hickson, supra.

As to Hickson element (2), in-service disease or injury, review of the appellant's service treatment records is completely negative for any psychiatric complaints or treatment. See Service Treatment Records; August 28, 1940, September 25, 1940, July 2, 1945, and November 21, 1949. In particular, the separation examination dated in November 1949 is pertinently absent any notation related to any psychiatric disorder. 

For certain chronic disorders, to include psychosis, service connection may be granted if the disease becomes manifest to a compensable degree within one year following separation from service. See 38 U.S.C.A. §§ 1101, 1110, 1112, 1113 (West 2002); 38 C.F.R. §§ 3.307, 3.309 (2010). In this case, however, there is no evidence of a psychiatric disorder within one year of the appellant's discharge from active duty service. Id. Accordingly, element (2) has not been satisfied. See Hickson, supra.

More than 15 years after the appellant was discharged from service, in 1965, he participated in a VA psychiatric examination. At that time, the VA examiner noted that the appellant was a very passive-submissive individual who constantly had to defend himself from tremendous feelings of hostility, violence, and aggressiveness and rather that losing control, he defended himself by reaction formation into a submissive individual. The appellant talked constantly about his unfair deals, his difficulties in not getting a fair chance in life, accompanied by great frustration due to failing in his reality testing. The examiner diagnosed the appellant with anxiety reaction, in a passive-aggressive hysterical character. See VA Examination Report, August 30, 1965. There was no indication that the appellant's condition could be linked to his time in active duty service.

The appellant participated in a VA psychiatric examination in August 1975. The appellant reported that after his discharge from service, he studied at night for four years and worked during the day selling candy. He then worked as a truck driver until September 1974. He reported that he quit this job due to his increasing nervousness, and was unemployed at the time of examination. Content of thought was that he harbored hopelessness, worthlessness and depressive ideas. The appellant stated that he was afraid to leave his home and that noises bothered him. He complained of muscle pains, restlessness, and insomnia. Hallucinations were not present. His affect was somewhat apathetic, and his general mood was depressed. Judgment was superficial and so was his insight. The VA examiner diagnosed the appellant with depressive neurosis. See VA Examination Report, August 5, 1975. Again, there was no indication that the appellant's diagnosed depressive neurosis was the result of his time in active duty service.

In February 1977, the appellant participated in a VA psychiatric examination in conjunction with his claim for pension. Upon mental status examination, the appellant spoke with a soft, low-pitched voice but was coherent and logical. He did not appear to be under any undue tension. He was cooperative and had normal productions without any thought disorder in process or content. He did not complain of hallucinations or delusions. He indicated that he had friends and did not have enemies. His affect was appropriate. He was compulsive and obsessively careful of order, cleanliness, and punctuality. His mood was depressed and sad and he stated that he felt he has been a failure in life. He reported having had some suicidal ideation, but did not know whether he could act on these thoughts. The VA examiner continued the appellant's previous diagnosis of depressive neurosis with anxiety. See VA Examination Report, February 15, 1977. There was no indication that the appellant's diagnosis was related to his active duty service.

The appellant submitted a statement from Dr. O.R.O., M.D., in March 2010. Dr. O.R.O. stated that she had cared for the appellant since 2000. It was noted that the appellant had a long history of depression, since World War II. Dr. O.R.O. also stated that the appellant had a history of PTSD, general anxiety disorder, and primary insomnia. See Statement of O.R.O., M.D., March 3, 2010.

Whether a physician provides a basis for his or her medical opinion goes to the weight or credibility of the evidence in the adjudication of the merits. See Hernandez-Toyens v. West, 11 Vet. App. 379, 382 (1998). Other factors for assessing the probative value of a medical opinion are the physician's access to the claims file and the thoroughness and detail of the opinion. See Prejean v. West, 13 Vet. App. 444, 448-9 (2000). Here, Dr. O.R.O. has provided an extremely bare conclusion. She does not provide any basis for her opinion that the appellant's current psychiatric disorders have existed since his time in active duty service. Further, it is unclear how familiar she is with the appellant's medical history. The appellant was discharged from active duty service in 1949. The first indication that he complained of or received treatment for a psychiatric disorder was in 1965, more than 15 years after service. Dr. O.R.O. failed to address this long time period, in addition to the fact that she has not provided a rationale as to why his current disabilities are related to service. Accordingly, the Board finds this medical opinion to be of little probative value.

The only remaining evidence in support of the appellant's claim consist of his own lay statements alleging that his current psychiatric disorders are the result of his time in service. The Board acknowledges that the appellant is certainly competent to give evidence about what he experiences; for example, he is competent to discuss his depression. See, e.g., Layno v. Brown, 6 Vet. App. 465 (1994). He is not, however, competent to diagnose any medical disorder or render an opinion as to the cause or etiology of any current disorder because he does not have the requisite medical knowledge or training. See Rucker v. Brown, 10 Vet. App. 67, 74 (1997) (stating that competency must be distinguished from weight and credibility, which are factual determinations going to the probative value of the evidence). 

The Board observes that lay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). See also Barr v. Nicholson, 21 Vet. App. 303 (2007) (lay testimony is competent to establish the presence of observable symptomatology). However, the Board finds that the appellant's lay statements in the present case are outweighed by the negative service and post-service treatment records, which fail to support the appellant's claim that his current disorders are related to service.

In May 2011, the appellant was afforded a VA mental disorders examination. At that time, the appellant complained of trouble sleeping, nervousness, being lost frequently, forgetfulness, misplacing objects, and not recognizing relatives. He reported that these symptoms began in the 1990's. Upon mental status examination, the appellant's speech was spontaneous and he was cooperative. His affect was constricted. The appellant was oriented to person and place, but not to time. His thought process was rambling and his thought content was unremarkable. The appellant complained of sleep impairment and indicated that he felt "nervous" the next day. He did not complain of obsessive or ritualistic behavior, did not have panic attacks, homicidal or suicidal thoughts. It was noted that the appellant's son handled his financial affairs due to his cognitive decline. 

The VA examiner diagnosed the appellant with dementia, not otherwise specified. It was further noted that the appellant's cognitive impairment overshadowed any other psychiatric symptom he might be exhibiting at the time of the examination, but no other mental disorder was found. There was no evidence of illegal drug or alcohol use, abuse, or dependence related to, secondary to, or aggravated by his dementia. The VA examiner stated that there was total social and occupational impairment due to the appellant's cognitive decline and physical impairment. He was not unable to provide for his basic needs of clothing, food, and shelter, nor was he able to perform his activities of daily living without assistance. The VA examiner also noted that the neuropsychiatric condition, dementia, was not caused by or a result of the appellant's active duty service during World War II. The VA examiner further noted the March 2010 opinion of Dr. O.R.O., indicating that although the appellant was given a diagnosis of depression and PTSD, did not specify stressors, symptoms or impairments. It was concluded that the appellant's cognitive decline was a degenerative condition that bore no relationship whatsoever with the appellant's military service. See VA Examination Report, May 2, 2011.

The Board is free to favor one medical opinion over another, provided it offers an adequate basis for doing so. See Evans v. West, 12 Vet. App. 22, 30 (1998); Owens v. Brown, 7 Vet. App. 429, 433 (1995). Here, the Board finds the May 2011 VA examination report to be the most persuasive. It was impossible to determine what, if any, additional psychiatric disorders the appellant suffered from, in addition to his dementia. Further, there was no evidence in the claims file to indicate that dementia or the other previously diagnosed psychiatric disorders were the result of active duty service. As noted above, while the appellant is competent to report his feelings of depression and anxiety over the years, but he is not competent to relate these disorders to service. As such, the Board finds that the appellant's psychiatric disorders are not the result of his time in active duty service. 

Although the appellant has established that he currently suffers from psychiatric disorders, the evidence of record does not support a finding that these conditions are the result of his time in service. The appellant's claim fails on the basis of element (3) of Hickson. Accordingly, the Board concludes that the preponderance of the evidence is against the claim for service connection, and the benefit of the doubt rule enunciated in 38 U.S.C.A. § 5107(b) is not for application. There is not an approximate balance of evidence. 

B. Left Ear Hearing Loss

The appellant contends that his current left ear hearing loss is the result of a disease or injury incurred during active duty service. Specifically, the appellant contends that frequent exposure to artillery noise during service caused his current disability.
With hearing loss claims, VA may only find hearing loss to be a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz is 40 decibels or greater; or when the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz are 26 decibels or greater; or when speech recognition scores are less than 94 percent. See 38 C.F.R. § 3.385 (2010).

In essence, lay testimony is competent when it regards the readily observable features or symptoms of injury or illness and "may provide sufficient support for a claim of service connection." See Layno, supra. In this regard, the Court has emphasized that when a condition may be diagnosed by its unique and readily identifiable features, the presence of the disorder is not a determination "medical in nature" and is capable of lay observation. In such cases, the Board is within its province to weigh that testimony and to make a credibility determination as to whether that evidence supports a finding of service incurrence and continuity of symptomatology sufficient to establish service connection. See Barr, supra; see also Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. Sept. 14, 2009)

Medical evidence is generally required to establish a medical diagnosis or to address questions of medical causation; lay assertions of medical status do not constitute competent medical evidence for these purposes. See Espiritu v. Derwinski, 2 Vet. App. 492, 494 (1992). However, lay statements may serve to support a claim for service connection by supporting the occurrence of lay-observable events or the presence of disability or symptoms of disability subject to lay observation. See 38 C.F.R. § 3.303(a) (2010); Jandreau, supra; see also Buchanan v. Nicholson, 451 F.3d 1331, 1336 (Fed. Cir. 2006) (addressing lay evidence as potentially competent to support presence of disability even where not corroborated by contemporaneous medical evidence).

With respect to Hickson element (1), current diagnosis, the Board notes that during his May 2011 VA audiological examination, the appellant's measured puretone threshold values for the left ear were as follows:





HERTZ



500
1000
2000
3000
4000
LEFT
105
105
105
105
105

Thus, the appellant has a current diagnosis of left ear hearing loss, for VA purposes. Hickson element (1) has been satisfied. See 38 C.F.R. § 3.385 (2010); see also Hickson, supra.

Review of the appellant's service records reveals that his military occupational specialty (MOS) was that of portable power generator operator. See Department of Defense Form 214. Though there are no complaints of left ear hearing loss during the appellant's time in active duty service, his MOS as well as his exposure to artillery fire during training, is consistent with his complaints of acoustic trauma in service. Furthermore, the Board finds that the appellant is both competent and credible to report on the fact that he was exposed to loud noises during his active duty and that he suffered from left ear hearing loss since that time. See Davidson, supra; Buchanan, supra; Jandreau, supra. Therefore, the Board concedes that the appellant was exposed to loud noise while on active duty. Thus, Hickson element (2), in-service disease or injury, has been satisfied. See Hickson, supra.

Further, the appellant complained of left ear symptomatology on multiple occasions after his discharge from active duty service. In particular, in September 1975, he participated in a VA Ear, Nose, and Throat (ENT) examination. At that time, he reported experiencing left sided hearing loss since 1944, due to exposure to artillery fire. Upon physical examination, the left tympanic membrane was very sclerotic, retracted, and with absent motion using a pneumatic speculum. The VA examiner's impression was left-sided tympanosclerosis with hearing loss. See VA ENT Examination Report, September 9, 1975. The remainder of the appellant's treatment records demonstrate his continued left ear hearing loss.

With respect to crucial Hickson element (3), nexus, in April 2010, the appellant submitted a statement from L.M.C., M.D., which noted that the appellant presented with a history of left total hearing loss, which began during World War II. See Statement of L.M.C., M.D., March 6, 2010.
The appellant also participated in a VA audiological examination in May 2011. At that time, he complained of hearing loss, more pronounced in the left ear. The VA examiner diagnosed the appellant with profound hearing loss from 250 Hz to 8000 Hz. The VA examiner opined that it was well known that prolonged exposure to noise of high intensity causes damage in the inner ear structures, resulting in irreversible hearing loss. In addition, hearing deficit could also be etiologically related to other factors, such as the normal aging process, medical conditions, head trauma, and ototoxicity. Overall, the VA examiner stated that the appellant was 93 years old at the time of the examination, and had a history of otitis media, military noise exposure and occupational noise exposure. "His hearing loss could be a combination of all of these factors." Therefore, it was the VA examiner's opinion that it was less likely than not that any left ear hearing loss was the specific result of the appellant's time in active duty service. See VA Audiological Examination Report, May 11, 2011.

In granting the appellant the full benefit of the doubt, the Board does not find the May 2011 VA examiner's opinion to be persuasive. The VA examiner failed to provide sufficient reasons and bases for the determination that the appellant's left ear hearing loss was not related to service. The Board notes however, that in Charles v. Principi, 16 Vet. App. 370, 374-375 (2002), the Court specifically held that tinnitus is a condition which is capable of lay observation. See also Washington v. Nicholson, 19 Vet. App. 362, 368 (2005). Similarly, the Board finds the appellant's claim regarding his having problems with left ear hearing loss since shortly before his separation from active duty competent and credible evidence of continuity of symptomatology because the presence of this disorder is not a determination "medical in nature" and it is therefore capable of lay observation. See Layno v. Brown, 6 Vet. App. 465, 469 (1994); Davidson, supra; Buchanan, supra; Jandreau, supra; Charles, supra. As such, the Board finds the appellant's reported symptomatology to be the most persuasive evidence of record.

The evidence in this case is approximately balanced regarding the question of whether the appellant experienced acoustic trauma in service sufficient to cause left ear hearing loss. Therefore, the benefit-of-the-doubt will be conferred in his favor and his claim for service connection for a left ear hearing loss disability is granted, subject to the controlling laws and regulations, which govern awards of VA compensation. See 38 U.S.C.A. § 5107(b) (West 2002); 38 C.F.R. §§ 3.102, 3.400 (2010); see also Gilbert v. Derwinksi, 1 Vet. App. 49 (1990).


ORDER

Entitlement to service connection for an acquired psychiatric disorder is denied.

Entitlement to service connection for left ear hearing loss is granted.



____________________________________________
JOAQUIN AGUAYO-PERELES
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs