Citation Nr: 1719258 
Decision Date: 05/08/17 Archive Date: 06/06/17

DOCKET NO. 10-13 725 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Houston, Texas


THE ISSUE

Entitlement to service connection for residuals of hysterectomy.


ATTORNEY FOR THE BOARD

Brandon A. Williams, Associate Counsel


INTRODUCTION

The Veteran had active military service from February 1991 to April 1995.

This matter comes before the Board of Veterans' Appeals (Board) from a July 2007 rating decision of the Department of Veteran Affairs (VA), Regional Office (RO) in Houston. Texas.

The issue was remanded by the Board in July 2014 for further development. Specifically, the Board remanded the issue to the RO for a supplemental medical opinion. A review of the claims folder reflects that the RO has complied with the July 2014 remand by providing a supplemental opinion in June 2015 and subsequently issuing a supplemental statement of the case on the matter.

In a February 2016 letter, the Veteran's former representative informed VA that she no longer represented the Veteran, and has not since June 2011. In a March 2017 letter, VA informed the Veteran of her representative's withdrawal, and explained her rights in regard to representation. In a March 2017 letter the Veteran elected to continue this appeal pro se (on one's own behalf). 


FINDINGS OF FACT

The preponderance of the evidence of record is against a finding that the Veteran's residuals of hysterectomy is causally related to, or was aggravated by, active service.


CONCLUSION OF LAW

The criteria for service connection for residuals of hysterectomy have not been met. 38 U.S.C.A. §§ 1101, 1110, 1131, 1154, (West 2014); 38 C.F.R. § 3.303, 3.304 (2016).


REASONS AND BASES FOR FINDING AND CONCLUSION

With respect to the Veteran's claim decided herein, VA has met all statutory and regulatory notice and duty to assist provisions. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326 (2016); see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015).

Legal Criteria

Service connection in general

Establishing service connection generally requires medical evidence or, in certain circumstances, lay evidence of the following: (1) A current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) nexus between the claimed in-service disease and the present disability. See Davidson v. Shinseki, 581 F.3d 1313 (Fed.Cir.2009); Jandreau v. Nicholson, 492 F.3d 1372 (Fed.Cir.2007); Hickson v. West, 12 Vet. App. 247 (1999); Caluza v. Brown, 7 Vet.App. 498 (1995), aff'd per curiam, 78 F.3d 604 (Fed.Cir.1996) (table). 

In each case where service connection for any disability is being sought, due consideration shall be given to the places, types, and circumstances of such Veteran's service as shown by such Veteran's service record, the official history of each organization in which such Veteran served, such Veteran's medical records, and all pertinent medical and lay evidence. 38 U.S.C.A. § 1154 (a) (West 2014).

Analysis

The Board has reviewed all of the evidence in the Veteran's claims file, with an emphasis on the medical evidence pertinent to the claim on appeal. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, the extensive evidence of record. Indeed, the U.S. Court of Appeals for the Federal Circuit has held that the Board must review the entire record, but does not have to discuss each piece of evidence. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). Therefore, the Board will summarize the relevant evidence where appropriate, and the Board's analysis below will focus specifically on what the evidence shows, or fails to show, as to the claim.

The Veteran contends that she currently has residuals of hysterectomy related to her military service. For the reason discussed below, the Board finds that service connection for residuals of hysterectomy is not warranted.

The claims folder reflects that during active service the Veteran was treated for various gynecological conditions to include: condyloma; human papillomavirus (HPV); acute cervicitis; ovarian cyst; bleeding during intercourse; cervical dysplasia; groin pain; pelvic pain among others. (See service treatment records (STRS) and June 2015 VA medical examination report).

In October 2002 the Veteran underwent a total abdominal hysterectomy with bilateral salpingo-oophorectomy. (See October 2002 Naval Medical Center Operation Report). The October 2002 operation report noted the Veteran with a pre and postoperative diagnosis of chronic pelvic pain and menometrorrhagia. As a result of her 2002 hysterectomy she is now required to continue hormonal therapy.

The Veteran was afforded a VA medical examination in May 2007. The May clinician opined that the Veteran's post-service abdominal hysterectomy was "absolutely not related at all to her previous episodes of cervical dysplasia while she was on active duty in the U.S. Marine Corps". The clinician concluded that the Veteran's hysterectomy had nothing to do with her history of abnormal pap smears. The clinician explained that Veteran's medical records reflected she had a normal cervix and that there were no squamous intraepithelial lesions, condyloma, or abnormalities at the time of the hysterectomy and that that her hysterectomy was related to menometrorrhagia and chronic pelvic pain (a post-service October 2002 operation report noted the Veteran's "history of chronic pelvic pain and heavy irregular menses" began after the birth of the Veteran's child in April 2002, more than seven years after separation from service). 

In a July 2014 remand, the Board found the May 2007 VA medical opinion to be adequate; however, the Board found that a supplemental opinion discussing whether the Veteran's chronic pelvic pain that resulted in her hysterectomy post-service, is due to the same pathology as the pelvic pain she experienced in service.

A supplemental medical opinion was obtained in June 2015. The June 2015 clinician opined that it is less likely than not that the Veteran's chronic pelvic pain noted in service resulted in her 2002 hysterectomy. The clinician explained that the Veteran's in service complaints and treatments of pelvic and groin pain were accompanied with orthopedic diagnoses of the right greater trochanteric bursitis and band snapping. The clinician continued to explain that on routine gynecologic evaluations in 1994 and 1995, the Veteran did not report chronic pelvic pain and denied irregular or heavy prolonged bleeding. Additionally, the Veteran was noted to have normal pap cytology upon separating from active service. The clinician continued to note that the Veteran's first post-service report of pelvic pain was in 2002, approximately 7 years from separating active service. Importantly, the onset of the Veteran's 2002 pelvic pain was attributed to the recent delivery of an infant (post-service). 

The June 2015 clinician further opined that it is less likely as not that the Veteran's chronic pelvic pain, which resulted in her 2002 hysterectomy, was permanently aggravated or worsened by her military service. The clinician explained that during service the Veteran's orthopedic conditions were treated; and subsequently had markedly improved symptoms, which suggest that her in-service groin and hip pain were related to her orthopedic conditions and not her gynecological conditions. The clinician continued to note that at the time of the 2002 hysterectomy the Veteran was not diagnosed with the orthopedic conditions found during service. 

The Board finds taking the record as a whole, the evidence is against a finding that the Veteran has residuals of hysterectomy that is causally related to or aggravated by her military service. 

The Veteran may sincerely believe that her residuals of hysterectomy are causally related to active service. However; there is no clinical evidence that the Veteran's residuals of hysterectomy are causally related to active service. The only clinical etiology opinions with regard to the Veteran's residuals of hysterectomy are against any such finding. The Veteran has not been shown to have the experience, training, or education necessary to make an etiology opinion to the claimed disability. Although lay persons are competent to provide opinions on some medical issues, the Board finds that a lay person is not competent to provide a probative opinion as to the specific issue in this case in light of the education and training necessary to make a finding with regard to the complexities of the claimed condition. The Board finds that such etiology findings fall outside the realm of common knowledge of a lay person. See Kahana v. Shinseki, 24 Vet. App. 428 (2011); See Jandreau v. Nicholson, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007).

As the preponderance of the evidence is against the claim, the benefit of the doubt is not for application and service connection is denied. 38 U.S.C.A. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).


ORDER

Entitlement to service connection for residuals of hysterectomy is denied.



____________________________________________
M. H. HAWLEY
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs