﻿Citation Nr: AXXXXXXXX
Decision Date: 02/28/20 Archive Date: 02/28/20

DOCKET NO. 190705-12614
DATE: February 28, 2020

ORDER

Entitlement to service connection for petit mal epilepsy is denied.

Entitlement to an initial rating of 40 percent for narcolepsy, but no higher, is granted.

FINDINGS OF FACT

1. There is no competent evidence reflecting a diagnosis of petit mal epilepsy. 

2. For the entire initial rating period on appeal, the Veteran’s narcolepsy without cataplexy most closely approximates at least 5 to 8 minor seizures weekly, with no major seizures. 

CONCLUSIONS OF LAW

1. The criteria for service connection for epilepsy, petit mal have not been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.310.

2. The criteria for a disability rating in of 40 percent, but no higher, for the Veteran’s service-connected narcolepsy have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.2, 4.7, 4.97, Diagnostic Codes (DCs) 8108, 8911.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty in the United States Air Force September 2010 to January 2019. 

This matter comes before the Board of Veterans’ Appeals (Board) from a June 2019 rating decision by a Department of Veterans Affairs (VA) Regional Office (RO). Given the date of this decision, the Veteran’s case is governed by the modernized review system, known by the Board as the AMA. On his July 2019 Notice of Disagreement (NOD) to the Board, the Veteran selected direct docket review. 

Although the Veteran has alleged that he has had to change employment and has difficulty driving or sitting for long periods of time, there is no evidence of the Veteran’s unemployability. As such, a total disability rating based on individual unemployability due to service-connected disabilities (TDIU) has not been raised. 

1. Entitlement to service connection for petit mal epilepsy is denied.

The Veteran contends he suffers from petit mal epilepsy; based on the statements provided by the Veteran on his Board NOD, it appears that the Veteran is asserting that his narcoleptic episodes are, in fact, petit mal seizures

Service connection is granted for disability resulting from disease or injury incurred in or aggravated by active duty. 38 U.S.C. § 1110; 38 C.F.R. §§ 3.303, 3.304. Service connection may be granted for any disease initially diagnosed after service, when all the evidence, including that pertinent to service, establishes the disease was incurred in service. 38 C.F.R. § 3.303 (d).

Establishing service connection generally requires medical or, in certain circumstances, lay evidence of (1) a current disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the present disability. See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Hickson v. West, 12 Vet. App. 247, 253 (1999).

A March 2019 VA Examination opined “the veteran does not have a diagnosis of petit mal epilepsy. His intended claimed condition is narcolepsy with sleep apnea.” As there is no other competent or lay evidence to the contrary besides conclusory lay statements, this matter must be denied. 

2. Entitlement to an initial rating of 40 percent for narcolepsy, but no higher, is granted.

The Veteran is seeking an increase in initial rating for a narcolepsy disorder, which is currently service-connected at 10 percent. The Veteran argues that his condition requires continuous medication, without which he has fully disabling sleep attacks.

Diagnostic Code 8108 provides that narcolepsy is to be rated as analogous to petit mal epilepsy under Diagnostic Code 8911, which, in turn, is rated under the general rating formula for minor seizures. 38 C.F.R. § 4.124a, Diagnostic Code (DC) 8911.

The General Rating Formula for Major and Minor Epileptic Seizures (General Rating Formula) provides that both the frequency and type of seizures a veteran experiences are considered in determining the appropriate rating. 38 C.F.R. § 4.124a, DC 8910, 8911. A major seizure is characterized by generalized tonic clonic convulsion with unconsciousness. Id. at Note (1). A minor seizure consists of a brief interruption in consciousness or conscious control associated with staring or rhythmic blinking of the eyes or nodding of the head (pure petit mal), or sudden jerking movements of the arms, trunk, or head (myoclonic type) or sudden loss of postural control (akinetic type). Id. at Note (2).

As for minor seizures, the General Rating Formula provides that a 10 percent evaluation is warranted for a confirmed diagnosis of epilepsy with a history of seizures; a 20 percent evaluation is warranted for at least two minor seizures in the past six months; a 40 percent evaluation is warranted for averaging at least five to eight minor seizures weekly; a 60 percent evaluation is warranted for nine to 10 minor seizures per week; and an 80 percent evaluation, the maximum for minor seizures, for more than 10 minor seizures weekly. 38 C.F.R. § 4.124a.

When continuous medication is shown to be necessary for the control of epilepsy, the minimum rating will be 10 percent. This rating will not be combined with any other rating for epilepsy. In the presence of major and minor seizures, the predominating type is rated, and there is no distinction between diurnal and nocturnal major seizures.

Under 38 C.F.R. § 4.121, to warrant a rating, the seizures must be witnessed or verified at some time by a physician. Regarding the frequency of epileptiform attacks, competent, consistent lay testimony emphasizing convulsive and immediate post-convulsive characteristics may be accepted. The frequency of seizures is to be ascertained under the ordinary conditions of life while not hospitalized.

An August 2018 Private Medical Note lists the Veteran’s condition as “narcolepsy without cataplexy.” Use of stimulants was noted, and the Veteran napped when needed. Restriction on driving more than 20 minutes unless medication improved his sleepiness symptoms was suggested. No seizures nor any sleep attacks were noted. A follow up in November 2018 indicated the medication allowed the Veteran to attempt to drive longer distances, and nap when needed. The Veteran was noted as fighting to stay awake after the medication wore off, but that sometimes he could not. A February 2019 Private Medical Note notes the Veteran’s increased sleepiness and difficulty staying awake, including at work and during his commute. The physician also discussed the effect of medication in reducing the severity of symptoms and the overlap with other conditions such as sleep apnea. No sleep attacks were noted in this medical visit, nor any seizures. 

In March 2019, the Veteran underwent a VA examination for narcolepsy. In the Narcolepsy Benefits Questionnaire (DBQ) portion of the examination, the examiner recorded the Veteran’s statements that he had suffered 1 sleep attack “most days (several per week),” but that now his symptoms are stable on medication. After a review of the medical history, the examiner noted “he has been treated with multiple medications which have somewhat controlled his symptoms, but he will still get sleep attacks driving, though less frequently.” The examiner answered “no” to the remaining disability benefits questionnaire questions due to the lack of diagnosis of a seizure disorder. The Board finds this evidence persuasive as to the frequency of the Veteran’s “sleep attack” symptoms. The Veteran had also reported that he suffers from a sleep attack most days, and such is confirmed by a medical finding of occasional sleep attacks even with medication. Thus, the medical evidence and lay evidence as to the frequency of sleep attacks is in harmony. 

Regarding the Veteran’s “sleep attacks,” this is analogous to the akinetic loss of postural control contemplated by minor seizures. Other seizures associated with narcolepsy, to include cataplectic seizures or major seizures contemplated by the schedular criteria, were not noted. The March 2019 VA Examination listed 0-1 sleep attacks (cataplectic/narcoleptic) over the last 6 months and no seizures or any seizure disorder. Thus, the Veteran’s condition most closely approximates a 40 percent disability rating based on an analogy between his “sleep attacks” and “minor seizures” contemplated by the schedular criteria. Because the Veteran suffered sleep attacks “most days” (at the most frequent occurrence), even while medicated, the Veteran appears to suffer about 7 sleep attacks per week. A higher schedular rating is not warranted because at no time does the Veteran claim to suffer from more than 8 sleep attacks weekly or any major seizures. 

An argument for a higher rating on an extraschedular basis was submitted by the Veteran’s representative in the December 2019 Appellant’s Brief. Under Thun v. Peake, 22 Vet. App. 111 (2008), there is a three- step inquiry for determining whether a Veteran is entitled to an extraschedular rating. First, the Board must first determine whether the evidence presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Second, if the schedular evaluation does not contemplate the Veteran’s level of disability and symptomatology and is found inadequate, the Board must determine whether the Veteran’s disability picture exhibits other related factors such as those provided by the regulation as “governing norms.” Third, if the rating schedule is inadequate to evaluate a Veteran’s disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Director of the Compensation to determine whether, to accord justice, the Veteran’s disability picture requires the assignment of an extraschedular rating. 

The Veteran has alleged symptoms of fatigue, daytime hypersomnolence, and sleep attacks. As discussed above, the sleep attacks most closely resemble akinetic loss of postural control contemplated by minor seizures and are therefore accounted for by the schedular criteria. 

The Veteran’s excessive “daytime sleepiness” and “hypersomnolence”, whether or not contemplated by the rating criteria for epileptic seizures, is also contemplated by the rating criteria for sleep apnea, which assigns a 30 percent rating for persistent day-time hypersomnolence. 38 C.F.R. § 4.97, DC 6847 (2017). The Veteran’s sleep apnea has been assigned a 50 percent rating. Thus, to assign a separate evaluation for sleepiness or hypersomnolence associated with his narcolepsy would result in compensating twice for the same symptom under different diagnoses, in violation of the rule against pyramiding. See 38 C.F.R. § 4.14. Thus, this symptom does not warrant extraschedular referral. As a result, a higher rating based on extraschedular criteria is not warranted. 

Based on the foregoing, the Veteran is entitled to a 40 percent disability rating for his narcolepsy, but no higher, for the entire period on appeal. 

 

 

Evan M. Deichert

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board Robert Gyenes, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.