Citation Nr: 1523823 
Decision Date: 06/04/15 Archive Date: 06/16/15

DOCKET NO. 10-29 468 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas


THE ISSUE

Entitlement to service connection for a low back disability.


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARINGS ON APPEAL

Veteran


ATTORNEY FOR THE BOARD

K. Fitch, Counsel


INTRODUCTION

The Veteran served on active duty from May to June 1966. 

This matter comes before the Board of Veterans' Appeals (Board) from a January 2010 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Waco, Texas. In that decision, the RO denied entitlement to service connection for osteochondrosis of the spine.

In May and December 2011, the Veteran testified at hearings before a Decision Review Officer (DRO) and before the undersigned, respectively, at the RO. Transcripts of those hearings have been associated with his claims folder.

In November 2012, this matter was remanded for additional development. 


FINDINGS OF FACT

The Veteran's low back disability, to include osteochondrosis with compression and wedging of T4 and T5 and hypertrophic arthritic changes involving the L3-L4, L4-L5, and L5-S1 articular facets, clearly and unmistakably pre-existed service and clearly and unmistakably was not aggravated in active service beyond natural progression. 



CONCLUSION OF LAW

The Veteran's low back disability was not incurred in or aggravated by active service. 38 U.S.C.A. §§ 1110, 1111, 1153 (West 2014); 38 C.F.R. §§ 3.303, 3.304, 3.306 (2014).



REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. VCAA.

In a September 2009 letter, the RO satisfied its duty to notify the Veteran under 38 U.S.C.A. § 5103(a) (West 2014) and 38 C.F.R. § 3.159(b) (2014). The RO notified the Veteran of: information and evidence necessary to substantiate the claim; information and evidence that VA would seek to provide; and information and evidence that the he was expected to provide. The Veteran was informed of the process by which initial disability ratings and effective dates are assigned, as required by Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). 

The "duty to assist" contemplates that VA will help a claimant obtain records relevant to the claim, whether or not the records are in Federal custody, and that VA will provide a medical examination when necessary to make a decision on the claim. 38 C.F.R. § 3.159 (2014). VA has done everything reasonably possible to assist the Veteran with respect to his claim for benefits in accordance with 38 U.S.C.A. § 5103A (West 2014) and 38 C.F.R. § 3.159(c) (2014). Relevant service treatment and other medical records have been associated with the claims file. The Veteran was also afforded VA examinations in connection with the claim that, taken together, fully address the criteria for deciding the claim. In this regard, the Board notes that the examiner reviewed the Veteran's medical history and claims file and offered reasoned opinions based on a review of the relevant evidence. 

In November 2012, this matter was remanded for further development, to include efforts to obtain private treatment records and a VA addendum opinion. The additional treatment records were subsequently associated with the Veteran's claims file and the Veteran was afforded an adequate opinion in March 2013. As such, the Board finds that there has been substantial compliance with the terms of the Board's remand. D'Aries v. Peake, 22 Vet. App. 97, 105 (2008); see also Dyment v. West, 13 Vet. App. 141, 146-47 (1999).


II. Service connection.

Service connection will be granted for a disability resulting from disease or injury incurred in or aggravated by active military service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. §§ 3.303, 3.304. Service connection generally requires evidence of (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the present disease or injury. Hickson v. West, 12 Vet. App. 247 (1999). 

Service connection may also be granted for listed chronic diseases when the disease is manifested to a compensable degree within one year of separation from service. 38 U.S.C.A. §§ 1101, 1112, 1113; 38 C.F.R. §§ 3.307, 3.309. Under § 3.303(b), an alternative method of establishing the second and/or third elements of service connection for a listed chronic disease is through a demonstration of continuity of symptomatology. See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013) (38 C.F.R. § 3.303(b) does not apply to any condition that has not been recognized as chronic under 38 C.F.R. § 3.309(a)). In this regard, lay persons may provide evidence of diagnosis and nexus under 38 U.S.C.A. § 1154(a). See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). 

When there is an approximate balance in the evidence regarding the merits of an issue material to the determination of the matter, reasonable doubt will be resolved in each such issue in favor of the claimant. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102. An appellant need only demonstrate that there is an approximate balance of positive and negative evidence in order to prevail. To deny a claim on its merits, the evidence must preponderate against the claim. Gilbert v. Derwinski, 1 Vet. App. 49 (1990); Alemany v. Brown, 9 Vet. App. 518 (1996).

In addition, a Veteran is presumed to be in sound condition, except for defects, infirmities or disorders noted when examined, accepted, and enrolled for service, or where clear and unmistakable evidence establishes that an injury or disease existed prior to service and was not aggravated by service. 38 U.S.C.A. §§ 1111, 1132, 1137.

The presumption of soundness attaches only where there has been an induction examination during which the disability about which the Veteran later complains was not detected. See Bagby v. Derwinski, 1 Vet. App. 225, 227 (1991). The regulations provide expressly that the term "noted" denotes "[o]nly such conditions as are recorded in examination reports," 38 C.F.R. § 3.304(b) , and that "[h]istory of pre- service existence of conditions recorded at the time of examination does not constitute a notation of such conditions." Id. at (b)(1).

For purposes of illustrating the analysis to be used in such cases, the Board notes the decision of the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) in Wagner v. Principi, 370 F.3d 1089 (Fed. Cir. 2004), summarizing the effect of 38 U.S.C.A. § 1111 on claims for service-connected disability.

When no preexisting condition is noted upon entry into service, the Veteran is presumed to have been sound upon entry. The burden then falls on the government to rebut the presumption of soundness by clear and unmistakable evidence that the Veteran's disability was both preexisting and not aggravated by service. The government may show a lack of aggravation by establishing that there was no increase in disability during service or that any "increase in disability [was] due to the natural progress of the" preexisting condition. 38 U.S.C.A. § 1153. If this burden is met, then the Veteran is not entitled to service-connected benefits. However, if the government fails to rebut the presumption of soundness under section 1111, the Veteran's claim is one for service connection. This means that no deduction for the degree of disability existing at the time of entrance will be made if a rating is awarded. See 38 C.F.R. § 3.322.

On the other hand, if a preexisting disorder is noted upon entry into service, the Veteran cannot bring a claim for service connection for that disorder, but the Veteran may bring a claim for service-connected aggravation of that disorder. In that case section 1153 applies and the burden falls on the Veteran to establish aggravation. See Jensen v. Brown, 19 F.3d 1413, 1417 (Fed. Cir. 1994). If the presumption of aggravation under section 1153 arises, the burden shifts to the government to show a lack of aggravation by establishing "that the increase in disability is due to the natural progress of the disease." 38 U.S.C. § 1153; see also 38 C.F.R. § 3.306; Jensen, 19 F.3d at 1417; Wagner, 370 F. 3d at 1096.

In this case, because the Veteran's January 1966 entrance examination was normal, 
the presumption of soundness attaches and can only be rebutted by clear and unmistakable evidence that the Veteran's disability both pre-existed service and was not aggravated by service.

Service treatment records include a January 1966 report of medical history for purposes of entrance into service on which the Veteran reported that he was treated for pulled back muscles prior to service and that he also experienced slight scoliosis which resulted in occasional catching of the spine. There was no back pain or any other residuals and he had no physical limitations. In May 1966, the Veteran was treated for back pain and kyphosis. He underwent a Medical Board examination and was found to have minimal pain on flexion and extension of the back. X-rays revealed osteochondrosis with compression and wedging of T4 and T5. The Veteran was determined to be unfit for service by reason of a physical disability, diagnosed as osteochondrosis of the spine. The Medical Board report included an opinion that the disability existed prior to service and was not aggravated by service. 

In a July 2011 letter, the Veteran's private physician opined that, based upon a review of the Veteran's medical records, it was apparent that the physical strain which he encountered in service began to cause him abrupt back pain. Due to scoliosis noted in January 1966 and the kyphosis noted during a May 1966 X-ray, the overall strength and biomechanics of the spine was altered. This back condition was aggravated by the intensity and weight of the initial military training and long term injury may have resulted from this training. Further, X-rays dated in September 2005 revealed significant increased calcification and degeneration of the facets of L5 and S1 and offset vertebra at L4 as compared to L5. Although it was unclear when this specific damage occurred because no previous films had been viewed, the physician indicated that damage at L5-S1 and the displacement of L4 on L5 was consistent with an injury of force and/or strain.

An August 2011 VA examination report revealed that the Veteran has been diagnosed as having hypertrophic arthritic changes involving the L3-L4, L4-L5, and L5-S1 articular facets. The examiner opined that the Veteran's current low back disability was not likely ("less likely as not"/"less than 50/50 probability") permanently aggravated by the Veteran's brief period of active duty. This opinion was based on the examiner's clinical experience and the fact that the signs and symptoms described on the January 1966 report of medical history and during the episode of treatment for back problems in service were indicative of and expected with the Veteran's developmental spine abnormality. There was no evidence to show that his spine condition progressed beyond a normal extent while on active duty and there were no records showing a progressive worsening of the condition within a reasonable amount of time after service. Also, the private physician's letter documented spine treatment beginning in 1995, which was almost 30 years following service. The findings that were documented from the radiological reports were indicated to be a normal progression of the Veteran's developmental spine condition.

At his hearings, the Veteran testified that he had received no treatment for a back disability prior to service; although he acknowledged occasionally having a "catch" in the back on lifting.

Finally, a clarifying opinion was sought and provided in March 2013. The examiner concluded that the Veteran's back condition clearly and unmistakably existed prior to service. It was found that the condition was a developmental/congenital spine abnormality and/or defect. The examiner also found that the condition clearly and unmistakably was not aggravated (underwent no permanent increase in disability) by active service beyond the normal progression of the disease. Specifically, the examiner stated that there was no evidence to show that the Veteran's spine condition progressed beyond a normal extent while on active duty, and that there were no records showing a progressive worsening of the condition within a reasonable amount of time after active service. The earliest treatment documentation of record for the lower back after service was in 1995, almost 30 years later. 

The examiner stated that this did not support the notion of a permanently aggravated condition, as treatment would have continued soon after service if that were the case. The examiner indicated that osteochondrosis of the spine was a developmental spine abnormality, and that hypertrophic arthritic changes involving the L3-L4, L4-L5, and L5-S1articular facets were a disease associated with the osteochondrosis. No other back disabilities were indicated to have been diagnosed since August 2009 as per available records. The examiner reviewed the private physician's opinion and indicated that there was no documentation to show that full service treatment records were reviewed. The examiner noted that the private physician did not discuss the documentation showing a pre-existing condition in the sick call documentation dated May 19, 1966 for "claims back hurts and causes headaches. He states history of same complaint since 1950." As such, the examiner stated that there was no change in the opinion given in conjunction with the last examination in August 2011.

In determining the probative value to be assigned to a medical opinion, the Board must consider three factors. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008). The initial inquiry in determining probative value is to assess whether a medical expert was fully informed of the pertinent factual premises (i.e., medical history) of the case. A review of the claims file is not required, since a medical professional can also become aware of the relevant medical history by having treated a Veteran for a long period of time or through a factually accurate medical history reported by a Veteran. Nieves-Rodriguez, 22 Vet. App. at 303-04. 

The second inquiry involves consideration of whether the medical expert provided a fully articulated opinion. See Id. A medical opinion that is equivocal in nature or expressed in speculative language does not provide the degree of certainty required for medical nexus evidence. See McLendon v. Nicholson, 20 Vet. App. 79 (2006).

The third and final factor in determining the probative value of an opinion involves consideration of whether the opinion is supported by a reasoned analysis. The most probative value of a medical opinion comes from its reasoning. Therefore, a medical opinion containing only data and conclusions is not entitled to any weight. In fact, a review of the claims file does not substitute for a lack of a reasoned analysis. See Nieves-Rodriguez, 22 Vet. App. at 304; see also Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007) ("[A] medical opinion ... must support its conclusion with an analysis that the Board can consider and weigh against contrary opinions"). 

In this case, the VA examiner considered an accurate history, provided a definitive opinion and supported that opinion with a rationale. As such, this opinion is highly probative. 

The Veteran's private physician opinion was based on an inaccurate history in that he did not consider the in-service reports of a pre-existing disability that was manifested by the same symptoms as noted during service. Hence, it is of little probative value.

The Veteran's recent statements and testimony are to the effect that he received no pre-service treatment and had only minimal symptoms prior to service or that there is no evidence of a pre-existing back disability. These recent statements are inconsistent with the statements he made at the time of his entry into service and when initially treated early in his period of active duty. The in-service statements are more probative because they were made closer in time to the events in question and were made in conjunction with his efforts to obtain treatment. His recent testimony and statements were made decades after the events in question and were self-serving, in that they were made in an effort to receive compensation. For these reasons the statements made in conjunction with the current appeal are not deemed credible.

The Veteran's recent statements and the opinion provided by his private physician provide evidence that the back disability began or was aggravated in service; but this evidence is not credible and is of little probative value. The clear and unmistakable evidence standard does not require the absence of contrary evidence. Kent v. Principi, 389 F.3d 1380 (Fed. Cir. 2004). The competent, credible and most probative evidence is all to the effect that the back disability pre-existed service and was not aggravated.

Based on the foregoing, the Board finds that the evidence shows that the Veteran's back disability clearly and unmistakably pre-existing his military service and clearly and unmistakably was not aggravated (no permanent increase in disability beyond the normal progression of the disease) by his brief time in active service. As such, the presumption of soundness in this case is rebutted and service connection must be denied. 38 U.S.C.A. § 1111; 38 C.F.R. § 3.304(b). 

Because the evidence is clear and unmistakable that the claimed back disability pre-existed service and was not aggravated, service connection, including on the basis of aggravation, must be denied.


ORDER

Service connection for a low back disability, to include osteochondrosis with compression and wedging of T4 and T5 and hypertrophic arthritic changes involving the L3-L4, L4-L5, and L5-S1 articular facets, is denied.




____________________________________________
Mark D. Hindin
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs