Citation Nr: 1532754 
Decision Date: 07/31/15 Archive Date: 08/05/15

DOCKET NO. 09-19 106 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Muskogee, Oklahoma


THE ISSUES

1. Entitlement to service connection for a skin disability, to include as due to Agent Orange exposure. 

2. Entitlement to an effective date earlier than March 6, 2012 for the award of an initial 100 percent rating for bilateral interstitial fibrosis with chest wall pleural plaques. 


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

Appellant



ATTORNEY FOR THE BOARD

Carole Kammel, Counsel


INTRODUCTION

The Veteran served on active duty from April 1965 to May 1969. 

These matters come to the Board of Veterans' Appeals (Board) on appeal, in part, from an October 2008 rating decision by the Muskogee, Oklahoma, Regional Office (RO) of the Department of Veterans Affairs (VA). By that rating action, the RO, in part, denied service connection for a skin disorder, claimed as due to exposure to chemical herbicides (Agent Orange) during service in the Republic of Vietnam. The Veteran appealed this rating action to the Board. 

In August 2010, the Veteran and his attorney at that time testified before the undersigned at a videoconference hearing in support of the claim for service connection for a skin disability, to include as due to Agent Orange. A copy of the hearing transcript has been associated with the Veteran's Veterans Benefits Management System (VBMS) electronic record.

In January 2011, the Board remanded the Veteran's claim for service connection for a skin disability, to include as due to Agent Orange exposure, to the RO for additional development. The requested development has been completed and this matter has returned to the Board for further appellate consideration.

This appeal also stems a May 2013 rating action. By that rating action, the RO assigned an initial 100 percent rating to the service-connected respiratory disability, effective March 6, 2012-- the date VA received the Veteran's claim for a total disability rating based on individual unemployabillity due to service-connected disability, wherein he indicated that he was unemployable due to his respiratory disability. The Veteran appealed the effective date of March 6, 2012 assigned to the 100 percent disability rating to the Board. 
The issue of entitlement to additional compensation benefits for a dependent spouse, S. M., has been raised by the record (See VA Form 21-686, Declaration of Status of Dependents, received by VA in August 2013), but has not been adjudicated by the RO. Thus, the Board does not have jurisdiction over this issue, and it is referred to the Agency of Original Jurisdiction (AOJ) for appropriate action. 

The issue of entitlement to an effective date earlier than March 6, 2012 for the award of a 100 percent rating for a respiratory disability is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the appellant if additional action is required on his part.


FINDINGS OF FACT

1. The Veteran disembarked onto the landmass of the Republic of Vietnam (RVN) while stationed aboard the USS BOSTON (CA-69) in 1967; thus, his exposure to Agent Orange is presumed. 

2. Resolving reasonable doubt in the Veteran's favor, the evidence supports a finding that the Veteran's skin disability, variously diagnosed and manifested by itching, skin lesions and a rash, is etiologically related to his presumed Agent Orange exposure in the RVN. 


CONCLUSION OF LAW

The criteria for establishing entitlement to service connection for a skin disability, variously diagnosed and manifested by itching, skin lesions and a rash, have been met. 38 U.S.C.A. §§ 1101, 1112, 1131, 1137, 1154(a), 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2014). 


REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. Duties to Notify and Assist

As provided for by the Veterans Claims Assistance Act of 2000 (VCAA), VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2014). In this case, the Board is granting in full the benefit sought on appeal. Accordingly, assuming, without deciding, that any error was committed with respect to either the duty to notify or the duty to assist, such error was harmless and will not be further discussed.

II. Merits Analysis

The Veteran seeks service connection for a skin disability, to include as due to Agent Orange exposure. 

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303(a). 

Service connection may also be granted for any disease diagnosed after discharge when all of the evidence establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

Establishing service connection generally requires medical or, in certain circumstances, lay evidence of (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the present disability. See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Hickson v. West, 12 Vet. App. 247, 253 (1999); Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd per curiam, 78 F.3d 604 (Fed. Cir. 1996) (table). 

In addition, certain chronic diseases may be presumed to have been incurred during service if they become manifested to a compensable degree within one year of separation from active duty. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309.

The second and third elements may be established by showing continuity of symptomatology. Continuity of symptomatology may be shown by demonstrating "(1) that a condition was 'noted' during service or any applicable presumption period; (2) evidence of post-service continuity of the same symptomatology; and (3) medical or, in certain circumstances, lay evidence of a nexus between the present disability and the post-service symptomatology." Barr v. Nicholson, 21 Vet. App. 303, 307 (2007); Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007) (holding that "[w]hether lay evidence is competent and sufficient in a particular case is a factual issue to be addressed by the Board"). However, the United States Court of Appeals for the Federal Circuit (Federal Circuit) recently held that the theory of continuity of symptomatology can be used only in cases involving those conditions explicitly recognized as chronic in 38 C.F.R. § 3.309(a). Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). As the Veteran has not been shown to have a chronic disease, as identified in § 3.309(a), the theory of continuity of symptomatology is not for application in the instant appeal. Id. 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

Applicable regulations provide that a veteran who served on active duty in Vietnam during the Vietnam era is presumed to have been exposed to Agent Orange or similar herbicide. 38 C.F.R. § 3.307(a)(1)(6)(iii). Service in Vietnam means actual service in the country of Vietnam from January 9, 1962 to May 7, 1975, and includes service in the waters offshore, or service in other locations if the conditions of service involved duty or visitation in the Republic of Vietnam. 38 C.F.R. § 3.307(a)(6)(iii); see Haas v. Peake, 525 F.3d 1168 (Fed. Cir. 2008). (VA's requirement that a veteran must have stepped foot on the landmass of Vietnam or the inland waters of Vietnam for the agent orange/herbicide exposure presumption is a valid interpretation of the statute); VAOPGCPREC 7-93 (holding that service in Vietnam does not include service of a Vietnam era veteran whose only contact with Vietnam was flying high-altitude missions in Vietnamese airspace); VAOPGCPREC 27-97 (holding that mere service on a deep-water naval vessel in waters off-shore of the Republic of Vietnam is not qualifying service in Vietnam). In other words, for purposes of applying the presumption of exposure to herbicides under 38 C.F.R. § 3.307(a)(6)(iii), the serviceman must have actually been present at some point on the landmass or the inland waters of Vietnam during the Vietnam conflict.

Diseases associated with exposure to certain herbicide agents used in support of military operations in the Republic of Vietnam during the Vietnam era will be presumed to have been incurred in or aggravated by service. 38 U.S.C.A. § 1116(a)(1); 38 C.F.R. § 3.307(a)(6). The presumption requires exposure to an herbicide agent and manifestation of the disease to a degree of 10 percent or more within the time period specified for each disease. 38 C.F.R. § 3.307(a)(6)(ii).

If a veteran was exposed to an herbicide agent during active military, naval, or air service, the following diseases shall be service connected if the requirements of 38 C.F.R. § 3.307(a)(6)(iii) are met, even though there is no record of such disease during service, provided further that the rebuttable presumption provisions of 38 C.F.R. § 3.307(d) are also satisfied: AL amyloidosis; chloracne or other acneform disease consistent with chloracne; Type 2 diabetes; Hodgkin's disease; all chronic B-cell leukemias; multiple myeloma; non-Hodgkin's lymphoma; Parkinson's disease; early onset peripheral neuropathy (previously known as acute and subacute peripheral neuropathy); porphyria cutanea tarda; prostate cancer; respiratory cancers (cancer of the lung, bronchus, larynx or trachea); ischemic heart disease; Parkinson's disease; hairy cell leukemia and other chronic B-cell leukemias; and, soft-tissue sarcoma (other than osteosarcoma, chondrosarcoma, Kaposi's sarcoma, or mesothelioma). The terms "soft tissue sarcoma" includes malignant schwannoma. 38 C.F.R. § 3.309(e) and Note (1). 

The diseases listed at 38 C.F.R. § 3.309(e) shall have become manifest to a degree of 10 percent or more at any time after service, except that chloracne or other acneform disease consistent with chloracne, porphyria cutanea tarda, and acute and subacute peripheral neuropathy shall have become manifest to a degree of 10 percent or more within a year after the last date on which a veteran was exposed to an herbicide agent during active military, naval, or air service. 38 C.F.R. § 3.307(a)(6)(ii). 

However, VA has determined that there is no positive association between exposure to herbicides and any other condition for which it has not specifically determined that a presumption of service connection is warranted. See 59 Fed. Reg. 341-46 (Jan. 4, 1994); see also 61 Fed. Reg. 57,586 -57,589 (Nov. 7, 1996); 72 Fed. Reg. 32,345-32,407 (June 12, 2007). 

The Veteran seeks service connection for a skin disability, which he claims is due to Agent Orange exposure in the RVN. He maintains that he has had skin problems (itching and crusting skin, and a skin rash) ever since he was exposed to Agent Orange after he disembarked onto the landmass of the RVN after his cruiser, USS BOSTON (CA-69), docked in DaNang Harbor on April 30, 1967 and May 17, 1967. He maintained that his duty was to patrol around the ship, escort personnel, and carry supplies and mail to the shore. (See October 2007 report, prepared by J. T., M. D., received and uploaded to the Veteran's VBMS electronic record on February 5, 2008 at page (pg.) 60; August 2010 Transcript (T.) at pg. 7); VA Form 21-4138, Statement in Support of Claim, dated and signed by the Veteran in November 2011, received and uploaded to the Veteran's VBMS electronic record on November 11, 2011). 

In the present case, the Board will resolve reasonable doubt in the Veteran's favor and find that he set foot onto the landmass of the RVN during his service aboard the USS BOSTON (CA-69) in Da Nang Harbor in 1967. The Veteran has submitted numerous statements, such as the above-cited November 2011 written correspondence and testimony before the undersigned regarding his service aboard the USS BOSTON (CA-69) in Da Nang, Harbor in April 1967 and May 1967, which included serving on the landmass of the RVN. The record also includes the Veteran's shipmates' (M. W. and D. M.) statements that corroborate his assertions of service on the landmass of the RVN on the above-cited dates. (See January 2008 statements to VA, prepared and submitted by M. W. and D. M. received and uploaded to the Veteran's VBMS electronic record on November 14, 2011). More importantly, in April 2012, the Joint Services Records Research Center (JSRRC) confirmed that on June 1, 1967, the USS BOSTON stopped in Da Nang Harbor to disembark personnel from the Cruiser USS FLOTILLA NINE onto the landmass of the RVN. VA personnel also conceded the Veteran's exposure to Agent Orange while serving on the landmass of the RVN in an April 2012 memorandum. (See, JSRRC's April 2012 response to the RO's inquiry and VA personnel's handwritten notation at the bottom of a copy of C&P Bulletin on Navy and Coast Guard Ships Exposure to Agent Orange, labeled as "DPRIS-DD 214-Certified Original-Certificate of Release or Discharge from Active Duty" and "VA Memo," received and uploaded to the Veteran's VBMS electronic record on April 14, 2012 and April 30, 2012, respectively). Thus, in view of the foregoing, the Board finds, with resolution of reasonable doubt in the Veteran's favor, that while serving aboard the USS BOSTON (CA-69), he disembarked onto the landmass of the RVN in 1967 and, thus, his exposure to Agent Orange is presumed. 38 C.F.R. § 3.307(a)(6)(ii). 

The Veteran's skin disorder, variously diagnosed as eczema, neurodermatitis, lichen simplex, and psoriasis (See February 2009 report, prepared by C. M., M. D. and May 2012 VA skin examination report, respectively), is not one of the conditions for which service connection is available on a presumptive basis for Agent Orange exposure under 38 C.F.R. §§ 3.307, 3.309. Notwithstanding the foregoing, the Veteran's claim for service connection for a skin disability, claimed as due to Agent Orange exposure can be asserted on a direct service connection basis. See Combee v. Brown, 34 F.3d 1039, 1042 (Fed. Cir. 1994).

The Board finds that with resolution of reasonable doubt in the Veteran's favor, service connection for a skin disability is warranted because the evidence is in equipoise as to whether it is attributed to his presumed Agent Orange exposure in the RVN. 

The Veteran's service treatment records are devoid of any subjective complaints or clinical findings referable to a skin disability. A May 1969 service separation examination report reflects that the Veteran's skin was evaluated as "abnormal" due to tattoo and scars of the left wrist.

Evidence in favor of the claim includes a report, prepared by C. M., M. D. In that report, Dr. C. M. concludes that the Veteran's skin disability, variously diagnosed as eczema, neurodermatitis and lichen simplex, is related to his Agent Orange exposure. Dr. C. M. did not provide any rationale for his favorable conclusion. However, his opinion is consistent with the Veteran's reports of having had continuous skin lesions and rash symptoms since active duty. (See report, prepared by C. M., M. D., received and uploaded to the Veteran's VBMS electronic record on February 20, 2009). 

Evidence against the claim includes a May 2011 VA examiner's opinion that the Veteran's skin disability, variously diagnosed as tinea pedis, tinea cruris and tinea corporis, eczema-Lichen simplex chronicus form, and prurigo nodularis, was not related to Agent Orange, and that the above conditions were not exotic or undiagnosable conditions. The examiner further opined that it was certainly possibly that the Veteran's itching (i.e., the Veteran gave a history of itching and cracking between the toes and eczema that began in 1968) began in 1968, but that its persistence was due to his rubbing. The VA examiner provided no further reasoning for her conclusion. 

The Board finds Dr. C. M.'s and the May 2011 VA examiner's opinions to be of reduced probative value in evaluating the Veteran's claim because neither opinion was supported with any rationale. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008) (holding that the probative value of a medical opinion comes from its reasoning, and that critical pieces of information from a claimant's medical history can lend credence to the opinion of a medical expert who considers them, and detract from the medical opinions of experts who do not); see also Madden v. Gober, 125 F.3d 1477, 1481 (Fed. Cir. 1997) (holding that the Board has the "authority to discount the weight and probity of evidence in the light of its own inherent characteristics in its relationship to other items of evidence").

Given the consistent, competent and credible lay testimony of the Veteran having had itching, skin lesions and a rash since military service, his presumed in-service exposure to Agent Orange and Dr. C. M.'s favorable opinion that his skin disability is related thereto, the evidence is at least evenly balanced as to whether his current skin disability is related to his in-service Agent Orange exposure. As the benefit of the doubt doctrine requires that the reasonable doubt created by this relative equipoise in the evidence be resolved in favor of the Veteran, entitlement to service connection for a skin disability, variously diagnosed and manifested by itching, skin lesions and a rash, as due to Agent Orange exposure is warranted. 38 U.S.C.A. § 5107(b).

ORDER

Service connection for a skin disability, variously diagnosed and manifested by itching, skin lesions and a rash, as due to Agent Orange exposure, is granted. 


REMAND

The Veteran perfected an appeal of the issue of entitlement to an effective date earlier than March 6, 2012 for the award of an initial 100 percent rating for a respiratory disability. In his February 2014 substantive appeal, the Veteran indicated that he desired a videoconference hearing before a Veterans Law Judge (VLJ) on this issue. Because Board videoconference hearings are scheduled at the RO, a remand to that office is required.

Accordingly, the case is REMANDED for the following action:

The RO should schedule the appellant for a Board videoconference hearing before a VLJ conducted at its facility on the issue of entitlement to an effective date earlier than March 6, 2012 for the award of an initial 100 percent rating for the service-connected respiratory disability as expeditiously as possible. After the hearing is conducted, or in the event that the Veteran withdraws his hearing request or fails to report for a scheduled hearing, the case should be returned to the Board.

The appellant has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
BARBARA B. COPELAND
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs