Citation Nr: 1533655 
Decision Date: 08/06/15 Archive Date: 08/20/15

DOCKET NO. 12-23 996 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in New Orleans, Louisiana


THE ISSUES

1. Entitlement to service connection for a right shoulder disability. 

2. Entitlement to service connection for a left shoulder disability. 

3. Entitlement to service connection for a right knee disability. 


ATTORNEY FOR THE BOARD

Thomas D. Jones, Counsel


INTRODUCTION

The Veteran, who is the appellant, served on active duty from July 1975 to July 2001. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from April 2010 and September 2010 rating decisions of a Regional Office (RO) of the Department of Veterans Affairs (VA) in New Orleans, Louisiana. 

In a December 2014 decision and remand, the Board found new and material evidence had been submitted to reopen service connection claims for disabilities of the left shoulder and right knee. Subsequently, these issues were remanded by the Board for additional development. The required development has been completed and this case is appropriately before the Board. See Stegall v. West, 11 Vet. App. 268 (1998). 


FINDINGS OF FACT

1. A current right shoulder disorder did not manifest during service or to a compensable degree within a year thereafter, has not been continuous since service separation, and was not caused by any in-service disease or injury. 

2. A current left shoulder disorder did not manifest during service or to a compensable degree within a year thereafter, has not been continuous since service separation, and was not caused by any in-service disease or injury. 

3. The Veteran does not have a current diagnosis of a right knee disability. 


CONCLUSIONS OF LAW

1. A right shoulder disorder was not incurred in service, nor may it be presumed to have been incurred therein. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309 (2014). 

2. A left shoulder disorder was not incurred in service, nor may it be presumed to have been incurred therein. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309 (2014). 

3. The criteria for the grant of service connection for a right knee disability have not been met. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309 (2014). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2014). The United States Court of Appeals for Veterans Claims (Court) issued a decision in the appeal of Dingess v. Nicholson, 19 Vet. App. 473 (2006), which held that the notice requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) apply to all five elements of a service connection claim, including the degree of disability and the effective date of an award. Those five elements include: (1) Veteran status; (2) existence of a disability; (3) a connection between a Veteran's service and the disability; (4) degree of disability; and (5) effective date of the disability. 

Upon receipt of the Veteran's claims, VA issued VCAA notice to him in the form of December 2009, March 2010 and May 2010 letters which informed him of the evidence generally needed to support the claims on appeal. This notice included information regarding the assignment of an increased evaluation and effective date; what actions he needed to undertake; and how VA would assist him in developing his claims. The initial VCAA notice letters were also issued to the Veteran prior to the rating decision from which the instant appeal arises; therefore, there was no defect with respect to timing of the VCAA notice. See Pelegrini v. Principi, 18 Vet. App. 112 (2004). 

Regarding the duty to assist in this case, VA has secured or attempted to secure all relevant documentation required by the VCAA or identified by the Veteran. The Veteran's service treatment records, VA medical records, and any identified private medical records have all been obtained. The Veteran was afforded several VA medical examinations for the disabilities on appeal, most recently in April 2015. The VA and private medical evidence contains sufficiently specific clinical findings and informed discussion of the pertinent history and clinical features of the disabilities on appeal and is adequate for purposes of this appeal, as it is competent medical evidence pertaining to the existence and etiology of the claimed current disabilities sufficient to decide the claim. 

The Board is not aware of, and the Veteran has not suggested the existence of, any additional pertinent evidence not yet received. All identified and available relevant documentation has been secured and all relevant facts have been developed. There remains no issue as to the substantial completeness of the claims. 38 U.S.C.A. §§ 5103, 5103A, 5107; 38 C.F.R §§ 3.102, 3.159, 3.326(a). For these reasons, the Board finds that the VCAA duties to notify and to assist have been met. 

II. Service Connection

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active military, naval, or air service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303(a). Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). As a general matter, service connection for a disability requires evidence of: (1) the existence of a current disability; (2) the existence of the disease or injury in service, and; (3) a relationship or nexus between the current disability and any injury or disease during service. Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004); see also Hickson v. West, 12 Vet. App. 247, 253 (1999), citing Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd, 78 F.3d 604 (Fed. Cir. 1996). 

Where the evidence shows a "chronic disease" in service or "continuity of symptoms" after service, the disease shall be presumed to have been incurred in service. For the showing of "chronic" disease in service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. With chronic disease as such in service, subsequent manifestations of the same chronic disease at any later date, however remote, are service-connected, unless clearly attributable to intercurrent causes. If a condition noted during service is not shown to be chronic, then generally, a showing of "continuity of symptoms" after service is required for service connection. 38 C.F.R. § 3.303(b); Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). 

Additionally, where a veteran served ninety days or more of active service, and certain chronic diseases become manifest to a degree of 10 percent or more within one year after the date of separation from such service, such disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. 38 U.S.C.A. §§ 1101, 1112, 1113; 38 C.F.R. §§ 3.307, 3.309(a). While the disease need not be diagnosed within the presumption period, it must be shown, by acceptable lay or medical evidence, that there were characteristic manifestations of the disease to the required degree during that time. Id. 

a. Right shoulder disability

The Veteran seeks service connection for a right shoulder disability, which he asserts first manifested during service. 

The Veteran's service treatment records are negative for any diagnosis of or treatment for a right shoulder disability. On an April 1999 report of medical history, the Veteran denied any history of a painful or "trick" shoulder. He did, however, report a history of right shoulder pain. Prior "very mild posterior right shoulder tenderness" was noted. 

Post-service, the Veteran underwent a VA general medical and orthopedic examination in September 2001 for an unrelated claim. At that time, he reported no disabilities of the right shoulder, and none were noted on objective examination. In his initial post-service compensation claim, filed in August 2001, the Veteran reported an unspecified shoulder injury in service; he later clarified this claim as for the left shoulder. A right shoulder disability was not claimed at that time of the Veteran's initial VA compensation claim. 

On VA examination in June 2012, the Veteran's right shoulder was characterized by a VA physician as normal. Another VA examination was afforded the Veteran in October 2012, at which time his history of in-service complaints of right shoulder pain were noted by the examiner. Mild degenerative changes of the right shoulder were noted on X-ray. Chronic bursitis of the right shoulder was also diagnosed. Regarding the etiology of these disabilities, the examiner noted that while the Veteran reported right shoulder pain in service, in-service and initial post-service X-rays of the right shoulder were within normal limits. Based on this, the examiner concluded it was less likely than not any current disability of the right shoulder was related to service, as degenerative changes of the right shoulder were not documented until several years after service. Likewise, bursitis of the right shoulder was not diagnosed until 2012. 

Most recently, a VA orthopedic examination was afforded the Veteran in April 2015. The claims file was reviewed in conjunction with the examination. The examiner diagnosed degenerative arthritis of the right shoulder, with onset in 2010. Regarding the etiology of the Veteran's degenerative arthritis of the right shoulder, the examiner noted that this disability was first diagnosed many years after service and was thus less likely than not related to any in-service disease or injury. 

Thus, after considering the totality of the evidence, the Board finds that a disability of the right shoulder did not manifest during service or within a year thereafter, as the service treatment records are negative for any diagnosis of or treatment for such a disorder. While the Board acknowledges the Veteran's in-service reports of right shoulder pain and tenderness in service, no underlying disease or injury was diagnosed at that time. Pain is not a disorder for which service connection may be granted. See Sanchez-Benitez v. West, 13 Vet. App. 282, 285 (1999) ("pain alone, without a diagnosed or identifiable underlying malady or condition, does not in and of itself constitute a disability for which service connection may be granted."). Additionally, the Veteran did not report any right shoulder pain or other symptomatology of the right shoulder on VA medical examination immediately after service, while claiming VA compensation for other disabilities. Review of the record indicates a right shoulder disability was not diagnosed until approximately 2012, more than 10 years after service separation. This lengthy period without complaint or treatment is evidence that there has not been ongoing symptomatology, and weighs heavily against the claim. See Maxson v. Gober, 230 F.3d 1330 (Fed. Cir. 2000). Based on the above, the Board finds the preponderance of the evidence is against a finding that a current right shoulder disorder began during service or within a year thereafter and has been continuous since that time. 

The Board also concludes the preponderance of the evidence is against a finding of a nexus between any disease, injury, or other incident of service and a current right shoulder disability. As noted above, VA examiners in October 2012 and April 2015 both concluded, after reviewing the claims file and examining the Veteran, that current disabilities of bursitis and degenerative arthritis of the right shoulder had their onset many years after service separation, and were less likely than not to have been related to any disease, injury, or other incident of service. Thus, service connection for a right shoulder disability is not warranted. Additionally, presumptive service connection for arthritis is not warranted, as degenerative arthritis of the right shoulder did not manifest to a compensable degree within a year of service separation, according to the competent evidence of record. 

The Veteran himself has asserted a current right shoulder disorder began during service. Nevertheless, the Veteran is not competent to assert onset of a right shoulder disorder in service, or to offer etiological evidence. A layperson is competent to report observable symptomatology which comes to him via his senses. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); see also Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006) (addressing lay evidence as potentially competent to support presence of disability even where not corroborated by contemporaneous medical evidence). Some medical issues, however, require specialized training for a determination as to diagnosis and causation, and such issues are therefore not susceptible of lay opinions on etiology, and the Veteran's lay statements therein cannot be accepted as competent medical evidence. See Clemons v. Shinseki, 23 Vet. App. 1, 6 (2009) ("It is generally the province of medical professionals to diagnose or label a mental condition, not the claimant"); Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007) (unlike varicose veins or a dislocated shoulder, rheumatic fever is not a condition capable of lay diagnosis); Jandreau, 492 F.3d at 1377, n. 4 ("sometimes the layperson will be competent to identify the condition where the condition is simple, for example a broken leg, and sometimes not, for example, a form of cancer"). Diagnosing and determining the cause of orthopedic disabilities requires interpretation of symptoms, knowledge of orthopedic medical practice, and other specialized expertise and training. Such has not been demonstrated by the Veteran in the present case. 

Lay testimony on the etiology of a current diagnosis of an orthopedic disorder is not competent in the present case, because the Veteran is not competent to diagnose an orthopedic disorder. See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009); Kahana v. Shinseki, 24 Vet. App. 428, 433, n. 4 (2011) (lay witnesses are competent to opine as to some matters of diagnosis and etiology, and the Board must determine on a case by case basis whether a veteran's particular disability is the type of disability for which lay evidence is competent). While he is competent to testify regarding such observable symptomatology as joint pain, such assertions of in-service symptomatology do not equate to a diagnosis. While all lay assertions must be considered, the Board finds they are not as probative as the remainder of the competent evidence of record in the present case. Furthermore, the Veteran has not asserted that he is reporting the opinion of a competent expert as told to him, and his lay assertions have not later been affirmed by a competent expert. 

Based on these medical examination and treatment reports and the other competent evidence of record, the Board finds the preponderance of the evidence to be against the claim of service connection for a right shoulder disability. The Veteran was not diagnosed with a current right shoulder disorder during service, and various VA examiners have reviewed the entire file and found no evidence of a link between service and any current right shoulder diagnoses. The Veteran's degenerative arthritis of the right shoulder also did not manifest to a compensable degree within a year of service separation. Thus, service connection on any basis for a right shoulder disorder must be denied. 

For the foregoing reasons, the preponderance of the evidence is against the claim for service connection for a right shoulder disability, and the claim must be denied. The benefit-of-the-doubt doctrine is, therefore, not for application. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102. 

b. Left shoulder disability

The Veteran seeks service connection for a left shoulder disability, which he asserts first manifested during service. 

The Veteran's service treatment records are negative for any diagnosis of or treatment for a right shoulder disability. On an April 1999 report of medical history, the Veteran denied any history of a painful or "trick" shoulder. While he did report a history of right shoulder pain, no left shoulder pain was reported at that time. 

Post-service in August 2001, the Veteran filed a service connection claim for an unspecified shoulder injury in service; he later clarified this claim as for the left shoulder. He underwent a VA general medical and orthopedic examination in September 2001 at which time he denied any specific injury of the left shoulder. On physical examination, the Veteran's left shoulder was painful with movement, but otherwise normal to clinical evaluation. X-rays of the left shoulder were within normal limits, without evidence of fracture, dislocation, or degenerative changes. A sprain of the left shoulder was diagnosed at that time. 

On VA examination in June 2012, left rotator cuff tendonitis was diagnosed. This began in 1999, according to the Veteran's self-reported history. Left acromioclavicular joint arthritis was also diagnosed, with onset in 2003. Upon review of the claims file and interview of the Veteran, the examiner noted the Veteran's self-reported history of diffuse left shoulder pain in 1999. These complaints were not, however, specific to the acromioclavicular joint and thus it is less likely than not, according to the examiner, that these complaints were related to any current acromioclavicular joint disabilities. The examiner noted that a left rotator cuff tear was confirmed by a June 2010 MRI. 

Most recently, a VA orthopedic examination was afforded the Veteran in April 2015. The claims file was reviewed in conjunction with the examination. The examiner diagnosed degenerative arthritis of the left shoulder, with onset in 2010, and left rotator cuff tendonitis, with onset in 2011, confirmed by MRI. Regarding the Veteran's medical history, the examiner noted the Veteran reported treatment in 1999 for bursitis of the left shoulder, when the Veteran first reported left shoulder pain. Treatment included injections and medication, and two sessions of physical therapy, by the Veteran's account. Regarding the etiology of the Veteran's degenerative arthritis and rotator cuff tendonitis of the left shoulder, the examiner noted that these disabilities were first diagnosed many years after service and were thus less likely than not related to any in-service disease or injury. 

Thus, after considering the totality of the evidence, the Board finds that a disability of left shoulder did not manifest during service, as the service treatment records are negative for any diagnosis of or treatment for such a disorder, and no symptoms of the left shoulder were reported by the Veteran in service. While a left shoulder sprain was diagnosed on VA examination several months after service separation, the VA examiner did not suggest this disorder had its onset in service. Moreover, because X-rays at that time were within normal limits and arthritis was not diagnosed in September 2001, service connection on a presumptive basis is not warranted. Several years after service, the Veteran was diagnosed with degenerative arthritis and rotator cuff tendonitis of the left shoulder, but VA examiners have dated onset of these disorders to 2003 and 2011 respectively, not during service or within a year of service separation. Based on the above, the Board finds the preponderance of the evidence is against a finding that a current left shoulder disorder began during service or within a year thereafter and has been continuous since that time. 

The Board also concludes the preponderance of the evidence is against a finding of a nexus between any disease, injury, or other incident of service and a current left shoulder disability. As noted above, VA examiners in October 2012 and April 2015 both concluded, after reviewing the claims file and examining the Veteran, that current disabilities of rotator cuff tendonitis and degenerative arthritis of the left shoulder had their onset many years after service separation, and were less likely than not to have been related to any disease, injury, or other incident of service. Thus, even assuming the Veteran first experienced left shoulder pain in service, symptoms which are not reflected in the service treatment records, VA examiners have concluded his in-service pain is unrelated to any current left shoulder disability. In conclusion, service connection for a left shoulder disability is not warranted. Additionally, presumptive service connection for arthritis is not warranted, as degenerative arthritis of the left shoulder did not manifest to a compensable degree within a year of service separation, according to the competent evidence of record. 

The Veteran himself has asserted a current left shoulder disorder began during service. Nevertheless, the Veteran is not competent to assert onset of a left shoulder disorder in service, or to offer etiological evidence. A layperson is competent to report observable symptomatology which comes to him via his senses. See Jandreau, 492 F.3d at 1372; see also Buchanan, 451 F.3d at 1331. Some medical issues, however, require specialized training for a determination as to diagnosis and causation, and such issues are therefore not susceptible of lay opinions on etiology, and the Veteran's and other lay statements therein cannot be accepted as competent medical evidence. See Clemons, 23 Vet. App. at 6 ("It is generally the province of medical professionals to diagnose or label a mental condition, not the claimant"); Woehlaert, 21 Vet. App. at 462 (unlike varicose veins or a dislocated shoulder, rheumatic fever is not a condition capable of lay diagnosis); Jandreau, 492 F.3d at 1377, n. 4 ("sometimes the layperson will be competent to identify the condition where the condition is simple, for example a broken leg, and sometimes not, for example, a form of cancer"). Diagnosing and determining the cause of orthopedic disabilities requires interpretation of symptoms, knowledge of orthopedic medical practice, and other specialized expertise and training. Such has not been demonstrated by the Veteran in the present case. 

Lay testimony on the etiology of a current diagnosis of an orthopedic disorder is not competent in the present case, because the Veteran is not competent to diagnose an orthopedic disorder. See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009); Kahana v. Shinseki, 24 Vet. App. 428, 433, n. 4 (2011) (lay witnesses are competent to opine as to some matters of diagnosis and etiology, and the Board must determine on a case by case basis whether a veteran's particular disability is the type of disability for which lay evidence is competent). While he is competent to testify regarding such observable symptomatology as joint pain, such assertions of in-service symptomatology do not equate to a diagnosis. While all lay assertions must be considered, the Board finds they are not as probative as the remainder of the competent evidence of record in the present case. Furthermore, the Veteran has not asserted that he is reporting the opinion of a competent expert as told to him, and his lay assertions have not later been affirmed by a competent expert. 

Based on these medical examination and treatment reports and the other competent evidence of record, the Board finds the preponderance of the evidence to be against the claim of service connection for a left shoulder disorder. The Veteran was not diagnosed with a current left shoulder disorder during service, and various VA examiners have reviewed the entire file and found no evidence of a link between service and any current left shoulder diagnoses. The Veteran's degenerative arthritis of the left shoulder also did not manifest to a compensable degree within a year of service separation. Thus, service connection on any basis for a left shoulder disorder must be denied. 

For the foregoing reasons, the preponderance of the evidence is against the claim for service connection for a left shoulder disability, and the claim must be denied. The benefit-of-the-doubt doctrine is, therefore, not for application. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102. 

c. Right knee disability

The Veteran seeks service connection for a right knee disability, which he asserts was either incurred in service, or is due to or aggravated by a service-connected disability of the left knee. The Veteran has been granted service connection for patellofemoral syndrome of the left knee. Service connection may be awarded for any disability which is proximately due to or the result of, or is otherwise aggravated by, a service-connected disease or injury. 38 C.F.R. § 3.310 (2014). 

On VA examination in June 2012, the Veteran's right knee was characterized by the examiner, a VA physician, as normal. Imagining studies of the right knee were negative for any degenerative changes. A bone infarct of the right femur was visible, however, according to the radiology study. Nevertheless, the examiner did not find the infarct to be noteworthy and characterized the Veteran's right knee X-ray as essentially normal. Regarding the etiology of any right knee disability, the examiner stated it was less likely than not that any right knee disability was related to service or a service-connected disability, as the examiner did not find a current right knee disability was present. 

Most recently, a VA orthopedic examination was afforded the Veteran in April 2015. The claims file was reviewed in conjunction with the examination. According to the Veteran's self-reported history, he injured his left knee while playing sports in service in 1979; however, he denied any specific in-service accident or injury to his right knee. Current symptoms included pain and limitation of motion of the right knee. On physical examination, the examiner found no evidence of a current right knee disability, as the knee joint was normal in appearance and did not present any objective symptomatology. Prior X-rays of the right knee from 2010, the most recent of record, were characterized as normal by the examiner. Because the examiner concluded no current disability of the right knee was present, he further opined that it was less likely than not that a service-connected disability had caused or aggravated a right knee disability, or that such a disability was incurred in or otherwise related to service. 

As there is no evidence of a current diagnosis of a right knee disability for which service connection may be awarded, the first element of service connection has not been met. Specifically, there is no competent evidence of a present disability; therefore, discussion of the other elements is not necessary. See Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). Moreover, the Veteran has not displayed or presented evidence of any disability of the right knee since his claim was first received in November 2009. See also McClain v. Nicholson, 21 Vet. App. 319 (2009). 

The Board acknowledges the Veteran's reports of pain of the right knee. Pain is not a disorder for which service connection may be granted. See Sanchez-Benitez v. West, 13 Vet. App. 282, 285 (1999) ("pain alone, without a diagnosed or identifiable underlying malady or condition, does not in and of itself constitute a disability for which service connection may be granted."). According to the June 2012 and April 2015 examination reports and VA X-rays, the Veteran does not have a current disability of the right knee. While the Veteran is competent to report such observable symptomatology as joint pain, he is not, as a layperson, competent to diagnosis an underlying orthopedic disability. See Jandreau, 492 F.3d at 1372; see also Buchanan, 451 F.3d at 1331 (addressing lay evidence as potentially competent to support presence of disability even where not corroborated by contemporaneous medical evidence). While all lay assertions must be considered, the Board finds they are not as probative as the remainder of the competent evidence of record in the present case. Furthermore, the Veteran has not asserted that he is reporting the opinion of a competent expert as told to him, and his lay assertions have not later been affirmed by a competent expert. 

In conclusion, the Board finds no competent evidence of a current disability of the right knee for which service connection may be awarded; as such, service connection for a right knee disability must be denied. The preponderance of the evidence is against the Veteran's claim, and as such, the benefit of the doubt rule does not apply. 38 U.S.C.A. § 5107(b); see Gilbert v. Derwinski, 1 Vet. App. 49 (1990).











ORDER

Service connection for a right shoulder disability is denied. 

Service connection for a left shoulder disability is denied. 

Service connection for a right knee disability is denied. 



____________________________________________
H. SEESEL
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs